American Totalisator Company, Inc., Petitioner *v.* Charles S. Seligman, Acting Secretary of Revenue, Commonwealth of Pennsylvania, et al., Respondents, Control Data Corporation, Party Respondent.

Argued October 26, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Alan M. Bredt,* Deputy Attorney General, with him *Donald J. Murphy,* Deputy Attorney General, and *Linda S. Lichtman,* Deputy Attorney General, for respondent.

*Frank A. Sinon,* with him *R. Stephen Shibla; Rhoads, Simon & Reader;* and of counsel, *Rogers, Hoge & Hills,* for party respondent.

*Perry S. Bechtle,* with him *Harold Greenberg, David Gutin,* and *Cohen, Shapiro, Polisher, Shiekman and Cohen,* for petitioner.

OPINION BY JUDGE ROGERS, December 22, 1976:

American Totalisator Company, Inc. (AmTote) has filed an Amended Petition for Review naming as respondents the Commonwealth's Secretary of Revenue, a Deputy Secretary of Revenue, the Executive Director of the Bureau of State Lotteries, the Department of Revenue and the Bureau of State Lotteries. Control Data Corporation (CDC) has intervened as a respondent. AmTote seeks an order of this Court enjoining the original respondents from entering into a contract for computer services and equipment for the establishment of what amounts to a State sponsored numbers game with CDC, or with any person other than the petitioner, and an order directing the original respondents to negotiate with and award the contract to it, AmTote.

The original respondents and CDC have filed preliminary objections to the Amended Petition for Review essentially raising two objections, the first, that AmTote lacks capacity or standing to sue, and the second, that AmTote's Amended Petition does not set forth a cause of action. The preliminary objections being, in our opinion, without merit, they will be overruled.

AmTote avers in its Amended Petition for Review that it is a substantial taxpayer of the Commonwealth; and that it and a number of other firms were invited by the Bureau of State Lotteries to "participate in a competitive bidding proposal."[1] The Amended Petition also contains portions of the Bureau's request for proposal which informed bidders that the contract will be awarded pursuant to "laws, rules and regulations relating to the award of public contracts in this State" and that the contract will be awarded "in conformity with the concept of the lowest responsible bidder."

The substantive averments of the Amended Petition are that only AmTote and CDC bid; that each was first required to submit cost information as a percentage of weekly gross dollars wagered; that AmTote's cost information was given on an effective fee basis and that CDC's proposal was set forth on a cumulative or incremental fee basis; that AmTote's proposed costs as first bid were lower than CDC's; that the respondent Deputy Secretary of Revenue and the Executive Director of the Bureau of State Lotteries disclosed the cost information contained in both bids and thereafter requested both bidders to express their bids in dollar figures; that CDC, knowing the amount of AmTote's bid, changed its, CDC's, bid to show a lower cost than it had first bid and a lower cost than AmTote's first and better bid; and that the original respondents chose CDC as the successful bidder.

## STANDING OR CAPACITY

The respondents, original and intervening, characterize AmTote as a mere disappointed bidder without standing. They further say that although Am-

---

[1] This quotation is from a letter sent to those invited to bid with the detailed request for proposal.

Tote has pleaded that it is a substantial taxpayer of Pennsylvania it, nevertheless, lacks standing because the State lottery funds are not tax receipts but the proceeds from public wagering, all of which are committed to the purpose of the Senior Citizens Property Tax Assistance Act, Act of March 11, 1971, P.L. 104, *as amended,* 72 P.S. §4751-1 et seq., in which AmTote has no interest.

We start with the general proposition that where bids for public contracts are invited and promised to be let to the lowest responsible competing bidder, a disappointed bidder who is also a taxpayer has standing to seek to enjoin the award of a public contract contrary to the promise. *Heilig Bros. Company, Inc. v. Kohler,* 366 Pa. 72, 76 A.2d 613 (1950); *Altemose v. The Pennsylvania Higher Educational Facilities Authority,* 7 Pa. Commonwealth Ct. 596, 300 A.2d 827 (1973); *See also Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A.2d 619 (1967); *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A.2d 138 (1966). Respondents rely on *Highway Express Lines, Inc. v. Winter,* 414 Pa. 340, 200 A.2d 300 (1964); *R. S. Noonan, Inc. v. York School District,* 400 Pa. 391, 162 A.2d 623 (1960); *Ogden Foods, Inc. v. State Farm Products Show Commission,* 11 Pa. Commonwealth Ct. 435, 315 A.2d 329 (1974), none of which cases has any application to the facts pleaded here. Those cases held that a disappointed bidder has no standing to seek to enjoin a public body from exercising its reserved right to reject all bids rather than award the contract to the plaintiff. The respondents here do not intend to reject both bids but, as for the present we must accept as established, to award a contract to CDC after the latter was given an opportunity to alter its bid so as to beat that of the petitioner.

The respondents' contention that AmTote, although alleged to be a substantial taxpayer, lacks standing because the funds received by the State Lotteries Bureau are the proceeds of wagering and those proceeds all inure to senior citizens is wholly without merit. Section 12 of the State Lottery Law, Act of August 26, 1971, P.L. 355, *as amended*, 72 P.S. §3761-12, provides that if lottery receipts are not sufficient to meet the requirements of the elderly as provided by statutes, additional funds to fulfill those obligations shall be appropriated from the General Fund of the Commonwealth.

### The Respondents' Demurrer

CDC says that AmTote has failed to state a cause of action because the invitation in this case was to bid for professional and skilled services not required to be let on competitive bids, by Section 507 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §187. The difficulty with this argument is that the original respondents did not seek out one firm and negotiate for its services; rather they invited proposals which, according to the Amended Petition for Review, they represented would be let as are contracts submitted for competitive bidding. The law in the field is that even in the absence of a constitutional or statutory requirement that a contract be awarded to the lowest responsible bidder, if in fact the public authority invites bids, public policy and the economical conduct of governmental business require that the contract be awarded to the lowest responsible bidder. *Bailey v. Gordon,* 67 D. & C. 411, 59 Dauph. 455 (1948); *Sullivan v. Grosscup,* 42 Dauph. 323 (1936). *See also Quackenbush Warehouse Company v. Hilton,* 67 Dauph. 61 (1954).

The original public respondents seem to agree that competitive bidding was required by their invitation

but say their actions after the public opening complied with the law of competitive bidding. A decision as to whether these respondents did comply with the law would have to be based on the facts other than those pleaded in the Amended Petition for Review, which, of course, are not before us on demurrer.

We accordingly enter the following:

ORDER

AND Now, this 22nd day of December, 1976, it is Ordered that all preliminary objections of the respondents, both original and intervening, be and they are hereby overruled; the respondents shall file answers within thirty (30) days after notice of this order in accordance with Pa. R.A.P. 1516(c).

CONCURRING OPINION BY JUDGE BLATT:

While I concur with the majority opinion that "where bids for public contracts are invited and promised to be let to the lowest responsible competing bidder, a disappointed bidder who is also a taxpayer has standing to seek to enjoin the award of a public contract contrary to the promise", I am concerned that the majority opinion may possibly be understood to provide that American Totalisator Company, Inc. (AmTote) also has standing to seek the additional relief it has requested here: i.e., to enjoin the respondents from contracting with any party except AmTote and to direct the respondents to accept AmTote's bid. AmTote, as both a taxpayer and a disappointed bidder clearly has standing to protest the award of a contract, but I do not believe that it has standing to request the judicial award of a public contract to itself. *Ogden Foods, Inc. v. State Farm Products Show Commission*, 11 Pa. Commonwealth Ct. 435, 315 A.2d 329 (1974).

As a taxpayer, AmTote may commence an action to guarantee that a public contract is properly awarded according to law, for, as a disappointed bidder, it is in a better position than almost anyone else to be aware of an allegedly improper award. If, however, it is eventually successful in blocking the award of the contract, I believe that the respondents would then be able to proceed to take *any* action in this matter not contrary to law, which may or may not be an award of the contract to AmTote.

Judge MENCER joins in this concurring opinion.

_____

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I dissent and would dismiss the petition for review in the nature of a complaint in equity for want of standing to sue on petitioner's part. As the majority notes, the established law is clear that a disappointed bidder as such lacks standing to sue but one who also is a taxpayer does have standing in equity to seek to enjoin the award of public contracts allegedly awarded or to be awarded contrary to law.

Petitioner here should not qualify as such a taxpayer. As a taxpayer into the General Fund which General Fund has at best a remote contingent responsibility to support one of two programs primarily suported by the State Lottery Fund[1] there is insuffi-

_____

[1] Created by the State Lottery Law (Act), Act of August 26, 1971, P.L. 351, *as amended*, 72 P.S. §3761.1 et seq., which Act also provides that money in the Lottery Fund after prizes, expenses, etc., shall be allocated for the purpose of providing tax relief for the elderly pursuant to the provisions of the Act of March 11, 1971, P.L. 104, known as the Senior Citizens Property Tax Assistance Act (Senior Citizens Property Tax or Rent Rebate Act), 72 P.S. §4751-1 et seq.; or for providing local transit for the elderly under the Act of January 22, 1968, P.L. 42, *as amended*, known as the Pennsylvania Urban Mass Transportation Assistance Law of 1967, 66 P.S. §1951 et seq. It further provides that if lottery proceeds for these purposes are insufficient "additional funds to fulfill these

cient nexus between petitioner's taxpayer status as to the General Fund and that Fund's contingent responsibility to undergird two programs for the elderly essentially supported by the State Lottery Fund. This view should be particularly adhered to absent any allegation of General Fund support because of inadequate State Lottery Fund support for these programs and where the relief sought by the complaining "taxpayer" would result in his becoming the successful bidder rather than the disappointed bidder.

Judge CRUMLISH, JR. joins in this dissent.

---

obligations shall be appropriated from the General Fund for this purpose." Section 12(a) of the Act, 72 P.S. §3761-12(a). A recent amendment to the Senior Citizens Property Tax Assistance Act provides that benefits under this Act shall be reduced pro rata whenever the proceeds available to this program from the State Lottery Fund are insufficient to afford full benefits. Act of July 30, 1975, P.L. 156, 72 P.S. §4751-8. This amendment makes even more remote the contingent responsibility of the General Fund for this program.