635 A.2d 691

STATEWIDE BUILDING MAINTENANCE, INC.
and Kathy McCafferty, Petitioners,

v.

PENNSYLVANIA CONVENTION CENTER
AUTHORITY, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1993.

Decided Dec. 16, 1993.

Bruce S. Marks, for petitioners.

Barry M. Klayman, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

We have before us preliminary objections in the nature of a demurrer filed by the Pennsylvania Convention Center Authority (the Authority) to a petition for review in the nature of a complaint in equity and mandamus filed in our original jurisdiction by Statewide Building Maintenance, Inc. (Statewide) and Kathy McCafferty (McCafferty), (collectively, Petitioners).[1] In the petition for review, Petitioners allege that as the lowest responsible bidder on a contract to provide custodi-

---

[1] Statewide Building Maintenance, Inc. is a corporation organized under the laws of New York which performs custodial and other services at convention centers and other locations throughout the northeastern United States. Kathy McCafferty is a resident and taxpayer in Philadelphia, Pennsylvania. (Petition for Review ¶¶ 1 and 2.)

al services at the Pennsylvania Convention Center in Philadelphia (Convention Center), Statewide should have been awarded the contract.

In a request for proposal (RFP) dated August 31, 1992, the Authority sought bids from qualified contractors to provide housekeeping and set-up services for the Convention Center. Statewide submitted a bid in response to this RFP, and in October 1992, the Authority informed Statewide that its bid had been accepted for a five year contract contingent upon approval by the City Council of Philadelphia (City Council).

On March 31, 1993, the City Council met but failed to act on the Statewide contract.[2] The Authority issued a second RFP on April 22, 1993 and although Statewide submitted a second proposal, it did so under protest, claiming that it had already been awarded the contract under the first RFP. On May 20, 1993, after receiving responses to the second RFP, the Authority awarded the contract to another proposer (Successful Bidder). Statewide protested the award of the contract to Successful Bidder, believing that Statewide was the lowest responsible bidder on the second RFP but that its bid was arbitrarily rejected by the Authority. By letters dated June 7 and June 9, 1993, Statewide also requested documents from the Authority related to the competitive bid process. On June 10, 1993, the Authority revoked Successful Bidder's May 20, 1993 contract award but passed a resolution permitting negotiation and execution of a short-term contract for housekeeping and set-up services with Successful Bidder, without first providing public notice or requesting competitive bids.

On June 15, 1993, Petitioners filed a petition for

**2.** Petitioners assert that City Council failed to act on the contract at that time solely because the Authority's Director of Operations had never informed City Council about the contract prior to the meeting. Petitioners also claim that City Council now would approve the contract if it were executed by the Authority and submitted to City Council for a vote. However, we note that a resolution to approve the housekeeping services contract with Statewide was ultimately disapproved by the Committee on Rules of City Council at a meeting on April 22, 1993, the same date that the Authority issued its second RFP. (1993 Journal of the City Council 346–347, 1081–1082 (April 22, 1993)).

review seeking relief from this court.[3] In Count I of the petition, Petitioners allege that the Authority acted illegally in awarding the short-term contract to Successful Bidder, in violation of the competitive bidding process and in an arbitrary and capricious manner. Accordingly, Petitioners request that we enjoin the Authority from negotiating and executing a contract for housekeeping services with anyone other than Statewide and that we enjoin the Authority from permitting anyone other than Statewide to perform such services. In Count II of the petition, in which Petitioners allege that the Authority awarded the contract for housekeeping services to Statewide pursuant to the first RFP, Statewide requests that we compel the Authority to execute that previously negotiated contract. Finally, in Count III of the petition, Statewide alleges that the Authority violated the Pennsylvania Freedom of Information Act, (actually known as the Pennsylvania Right to Know Act, 65 P.S. §§ 66.1–66.4), by failing to provide Statewide with the documents it requested, both orally and in its letters of June 7 and June 9, 1993; therefore, Statewide requests that we compel the Authority to make the requested documents immediately available for Statewide's inspection.[4] On July 13, 1993, the Authority filed preliminary objections in the nature of a demurrer, requesting this court to dismiss all three counts of the petition for review on grounds that Petitioners failed to state a claim upon which relief can be granted and for lack of jurisdiction.[5]

3. In Count I of Petitioner's complaint, both Statewide and McCafferty request relief; however, in Counts II and III of the petition for review, only Statewide seeks relief; McCafferty is not included in either of these requests.

4. In addition to the petition for review, Petitioners also filed an application for expedited discovery, an application for special relief in the form of a temporary restraining order and an application for special relief in the form of a preliminary injunction. On June 16, 1993, Judge Friedman heard arguments on these applications, which she denied in a memorandum opinion and order issued on June 18, 1993.

5. In ruling upon preliminary objections, we must accept as true all well pleaded material facts set forth in the complaint as well as the inferences fairly deducible therefrom, but not conclusions or averments of law. *Zurenda v. Commonwealth*, 46 Pa.Commonwealth Ct. 67, 405 A.2d 1124 (1979). For the demurrer to be sustained, it must clearly appear from

The foundation for Petitioners' request for relief in Count I, to enjoin the Authority from contracting with anyone other than Statewide, and Statewide's request for relief in Count II, to compel the Authority to execute a contract with Statewide, both lie in the assertion that the Authority is required under section 15(a) of the Pennsylvania Convention Center Authority Act (Act), Act of June 27, 1986, P.L. 267, 53 P.S. § 16215(a), to seek competitive bids for a contract to provide housekeeping services for the Convention Center and then to award the contract to the lowest responsible bidder. The Authority, however, maintains that it is not statutorily required to seek competitive bids for such a contract and, therefore, need not award the contract to the lowest responsible bidder.

The Act provisions dealing with the award of contracts by the Authority are found at 53 P.S. § 16215; the Authority relies on subsections (a) and (c) of 53 P.S. § 16215 to support its position. These subsections provide in relevant part as follows:

(a) **Lowest Responsible Bidder.**—All construction, reconstruction, repairs or work of any nature made by the authority, where the entire cost, value or amount of such construction, reconstruction, repairs or work, including labor and materials, shall exceed $4,000, ... shall be done only under contract or contracts to be entered into by the authority with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as hereinafter provided, but the authority shall have the right to reject any or all bids or select a single item from any bid.... Nothing in this section or any other law of this Commonwealth shall require the authority to competitively bid architectural design, engineering, construction management or other professional services required by the authority.

(c) **Management prerogatives.**—Nothing in this section or in any other law of the Commonwealth shall preclude the

those facts that the law will permit no recovery. *Niebauer v. Centre County Solid Waste Authority,* 59 Pa.Commonwealth Ct. 264, 429 A.2d 1210 (1981).

board, with the approval of six members, from negotiating contracts for management, operation, concession services, licensing or leasing of a convention center, or any part thereof. . . .

■ Upon review of these sections, we must agree with the Authority that housekeeping services would fall under "operation" of the completed Convention Center, covered in subsection (c), rather than work involved in the Convention Center's construction, reconstruction or structural repair, covered in subsection (a). Because the Authority is required to enter contracts with the lowest responsible bidder only in the latter case, we are not dealing with a competitive bid situation here.[6]

Petitioners argue that housekeeping services must fall within the subsection (a) phrase "work of any nature," reasoning that the limited exception to the competitive bidding requirement set forth in subsection (c) was meant to apply only to the overall management, operation and leasing of the Convention Center and not to mere janitorial services. However, because such a reading would take the questioned phrase out of context, a more reasonable interpretation would be that the phrase refers to "work of any nature" which is integral to the construction, reconstruction or repair of the Convention Center. Janitorial services do not fall into this category; rather, no matter how routine or mundane, they are properly considered part of the Convention Center's operation.[7]

6. In *Niebauer v. Centre County Solid Waste Authority,* 59 Pa.Commonwealth Ct. 264, 267–68, 429 A.2d 1210, 1212 (1981), we interpreted virtually identical language from the Municipal Authorities Act, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 312, which requires competitive bidding on contracts for "construction, reconstruction, repairs or work of any nature" where costs exceed $2,500. We agreed with the Court of Common Pleas that a contract to dispose of municipal waste was not included in the section requiring competitive bidding because it was not a contract for "construction, reconstruction, repairs or work . . . :"

7. Indeed, the Authority viewed housekeeping services in this light, describing them in the RFP as follows:

*House Services.* The following services are to be provided to [the Authority] *in connection with its operation and management of the Center* ("House Services").

■ Relying on *City of Philadelphia v. Department of Environmental Resources,* 133 Pa.Commonwealth Ct. 565, 577 A.2d 225 (1990) and *American Totalisator Co. v. Seligman,* 27 Pa.Commonwealth Ct. 639, 367 A.2d 756 (1976), *aff'd,* 489 Pa. 568, 414 A.2d 1037 (1980), Petitioners also contend that even in the absence of a statutory requirement, a contract is required to be awarded to the lowest responsible bidder when, as here, the public authority invites bids. Accordingly, Petitioners assert that once the Authority issued the first RFP and, based on that RFP, selected Statewide to provide the Convention Center's housekeeping services, the Authority was required to award the contract to Statewide as the lowest responsible bidder under the RFP. We believe that Petitioners reliance on these cases is misplaced.

In *American Totalisator,* a disappointed bidder sought to enjoin the award of a public contract for computer services to the successful bidder. The disappointed bidder also sought an order directing that it be awarded the contract as the lowest responsible bidder. In preliminary objections, the successful bidder claimed that because the invitation was to bid for highly skilled professional services, which were exempt from competitive bidding, the disappointed bidder had failed to state a cause of action. However, we rejected this argument. We reasoned that *where the respondents invited proposals which "they represented would be let as are contracts submitted for competitive bidding,"* even when not statutorily required to do so, "public policy and the economical conduct of governmental business require that the contract be awarded to the lowest responsible bidder." *Id.,* 27 Pa.Commonwealth Ct. at 644, 367 A.2d at 758. (Emphasis added.) Indeed, the

· Standard housekeeping services—includes cleaning of offices, public spaces, meeting rooms, exhibit halls, ballroom, building exterior, carpeting, entrances, docks and doors; snow removal; interior windows and exterior ground level windows; and relamping
· Event housekeeping services—includes standard housekeeping services referenced above plus restroom porter service and evening exhibit hall aisle cleaning and meeting room cleaning
· Set-up services—includes installation and dismantling of tables, chairs, risers and operation of partitions and exhibit hall walls. (Petition for Review ¶ 5; Exhibit A § 1.03(b)(ii).) (Emphasis added.)

respondents in *American Totalisator* agreed that competitive bidding was required by their request for proposal.[8] That is not this case.

Like the respondents in *American Totalisator*, the Authority was not bound by statute to seek competitive bids for the housekeeping services contract. However, unlike the respondents in *American Totalisator*, the Authority did not elect or otherwise promise to use the competitive bid process. In fact, in its first RFP, the Authority disclaimed any obligation to contract with the lowest responsible bidder, stating:

> Upon receipt of the Proposals, [the Authority] may short-list the Proposers based on evaluation criteria including, but not limited to, that cited in Section 4.01 of this RFP. The [Authority] may then interview each of the short-listed Proposers and may require presentations to be made to [the Authority] by such Proposers. Upon completion of any such interviews and final evaluation of the Proposals, [the Authority] will select the Proposer having the Proposal which best meets the needs of [the Authority], in the sole discretion of [the Authority]. The Proposal with the pricing most favorable to [the Authority] will not necessarily be accepted, nor will any reason for the rejection of any Proposal be indicated.

(Petition for Review ¶ 5, Exhibit A § 4.03.)

Here, the Act did not require the Authority to award the housekeeping services contract through the competitive bid process, and the Authority did not otherwise promise to conform to the concept of the lowest responsible bidder in awarding the contract; therefore, Petitioners' requests for relief in Count I and Statewide's request for relief in Count II of the petition for review were without basis. Because the allegations were insufficient to make out a cause of action, we dismiss Counts I and II of the petition for review.

8. The request for proposal in that case specifically stated that the contract would "be awarded in conformity with the concept of the lowest responsible bidder." *American Totalisator,* 489 Pa. at 575, 414 A.2d at 1040. Based on this language, our Supreme Court determined that *where the Commonwealth elected to use the competitive bid process,* the successful bidder had no ground for complaint.

■ Again with regard to Count II of Petitioners' petition for review, the Authority maintains that lack of subject matter jurisdiction provides a second basis for dismissal. The Authority asserts that because Count II alleges the existence of a contract between Statewide and the Authority, the question lies within the exclusive jurisdiction of the Board of Claims rather than within the original jurisdiction of this court. We agree.

The Act of May 20, 1937, P.L. 728, No. 193, was amended by the Act of October 5, 1978, P.L. 1104, No. 260, § 3, 72 P.S. 4651–4 to give the Board of Claims "exclusive jurisdiction to hear and determine claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300 or more." As our Supreme Court noted in *Shovel Transfer & Storage, Inc. v. Simpson*, 523 Pa. 235, 565 A.2d 1153 (1989), a claim arising from a contract is often a dispute over the existence of the alleged contract as well as the liability flowing from it. Thus, the Board of Claims cannot deny jurisdiction over a particular cause of action unless it first determines that no valid contract exists. *See also Vartan v. Commonwealth of Pennsylvania*, 151 Pa.Commonwealth Ct. 86, 616 A.2d 160 (1992).

Petitioners nevertheless maintain that because the Authority's award was not conditional, we have jurisdiction to compel the Authority to execute the contract. *McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 74 A.2d 384 (1950).[9]

9. Petitioners claim that *McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 74 A.2d 384 (1950), controls here because it is based on facts identical to those in this case. We disagree. In *McIntosh*, our Supreme Court held that an equity court may determine the validity of a contract and so compel its final execution where the award is not tentative and is within the discretion of the public official. However, in *McIntosh*, unlike our situation, the bids received were in the form of contracts, fully and completely executed, so as to be automatically binding upon acceptance by the official in charge of the contract award. That official sent a letter to the successful bidder specifically awarding it the contract; contract finality was tentative only in the sense that the bidder was first required to file performance and material bonds. When the successful bidder filed these bonds, which it did promptly, the parties were contractually bound and the official was without further

Although Petitioners concede that the Authority's award of the contract allegedly was contingent upon City Council approval, Petitioners argue that the RFP did not indicate that City Council approval was mandatory but merely stated that contract approval *may* be subject to such approval "in accordance with the Lease and Service Agreement between the City of Philadelphia and the [Authority] adopted by Ordinance of City Council dated June 29, 1989." (Exhibit A § 4.06.) Further, Petitioners contend that a requirement conditioning the contract upon City Council approval directly violates the Act.[10] Pressing the merits of Statewide's contractual claim, Petitioners argue that because the Authority's reason for rescinding its original contract with Statewide was based on a legal nullity, we should now enforce that contract or at least compel the Authority to resubmit the contract for City Council approval. However, the clear objective in making these arguments is to establish a contractual relationship between Statewide and the Authority based on the validity of the original contract, a determination within the exclusive jurisdiction of the Board of Claims. *Shovel.* Thus, we do not consider them here.

With regard to Count III of the petition for review, the Authority contends that it too must be dismissed for failure to state a cause of action upon which relief may be granted and for lack of jurisdiction. Again we agree.

discretion in the matter. As to any approval required, the court in *McIntosh* determined that the official already had secured such approval prior to making the award.

Here, by contrast,· the invited bids were not presented in final contract form. In fact, the RFP clearly indicated that after bids were received and a proposer selected, further discussion of contract terms and conditions, subject to the approval of City Council, would be required. (Exhibit A §§ 4.05 and 4.06.)

**10.** Petitioners rely on section 15(d) of the Act, 53 P.S. § 16215(d), which provides:

**(d) Application of city ordinances.**—The authority, its contractors, subcontractors, assignees, lessees, agents, vendors and suppliers shall not be subject to any city laws, ordinances, rules or regulations relating to any limits or preferences with regard to employment, contracting or procurement in the construction and operation of the convention center.

Under Count III, Statewide seeks to compel the Authority to make certain documents available to Statewide for inspection and copying, pursuant to the Pennsylvania Right to Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4. The Right to Know Act grants every citizen of the Commonwealth the right to examine and inspect public records, 65 P.S. § 66.2, and to extract or make copies of those records, 65 P.S. § 66.3. Where this right is denied, a Commonwealth citizen may appeal to a court of competent jurisdiction, 65 P.S. § 66.4.

Here, however, the petition for review does not allege that Statewide is a citizen of the Commonwealth; rather, the petition alleges that Statewide is a corporation organized under the laws of New York.[11] (Petition for review ¶ 1.) Accordingly, Statewide has no right under the statute to access public records or to appeal the denial of such disclosure.[12]

Petitioners contend that under *Ryan v. Pennsylvania Higher Education Assistance Agency,* 68 Pa.Commonwealth Ct. 123, 448 A.2d 669 (1982), Statewide has a right to inspect the requested documents. In *Ryan,* we held that an

11. Although paragraph 2 of the petition for review names Kathy McCafferty, a *resident* and *taxpayer* of Philadelphia, Pennsylvania, as an additional plaintiff in the action, her inclusion will not benefit Statewide with regard to Count III. We note that both the June 7, 1993 letter and the June 9, 1993 letter, requesting the Authority to make the documents available, were sent solely on behalf of Statewide Building Maintenance; McCafferty is never mentioned. (Petition for Review, Exhibits B and C.) Moreover, the petition specifically names Statewide as requesting the documents, excluding any mention of McCafferty. (Petition for Review ¶¶ 31, 32 and 45.) Finally, the prayer for relief in Count III of the petition is made solely by "Plaintiff, Statewide," whereas in Count I of the petition, relief is requested by "Plaintiffs." (Petition for review at 8, 10.)

12. Indeed, the petition does not allege that Statewide's requests were denied but only that the Authority thus far had failed to provide Statewide with the requested documents. No appeal will lie under the Right to Know Act until there has been a denial of access to public records. *Shultz v. Board of Supervisors of Jackson Township,* 95 Pa.Commonwealth Ct. 550, 505 A.2d 1127 (1986).

attorney was entitled as a Commonwealth citizen to seek disclosure of documents under the Right to Know Act, and he was not precluded from pursuing these rights merely because he represented a client who was not a Pennsylvania citizen. Statewide thus asserts its entitlement to documents under the Right to Know Act where the request was made by its attorney, a Pennsylvania citizen, on Statewide's behalf. However, *Ryan* is inapplicable here. Unlike the situation in *Ryan*, the request for access to documents was made by Statewide in its own name and not in the name of its attorney. Moreover, it is Statewide and not Statewide's attorney which now seeks to compel disclosure.[13] Because Statewide is not a Common-

13. Petitioners maintain that to force Statewide's attorney rather than Statewide to serve as the plaintiff would put form over substance. Although there may be some truth in this assertion, the fact remains that the Right to Know Act only gives Commonwealth citizens the right to seek disclosure of public documents; Statewide is not a Commonwealth citizen. We would point out that as a New York corporation, Statewide was only a disappointed bidder and not a Pennsylvania taxpayer and, therefore, Statewide lacked standing to bring this action. *J.P. Mascaro Sons, Inc. v. Bristol Township*, 95 Pa.Commonwealth Ct. 376, 505 A.2d 1071 (1986). However, Statewide had no difficulty in putting form over substance when it named McCafferty, a Pennsylvania taxpayer, as a plaintiff in an attempt to secure standing to challenge the award of a public contract.

In fact, we note that Statewide has failed in this attempt. Although McCafferty is a Pennsylvania taxpayer, the petition for review has failed meet the test for taxpayer standing set forth in *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) because it has not shown that McCafferty was aggrieved by the Authority's action by asserting a substantial, direct or immediate interest or injury. Indeed, the petition for review fails to allege any manner in which McCafferty has been aggrieved. Instead, the petition does no more than identify McCafferty as a Pennsylvania resident and taxpayer; the remainder of the petition for review is devoted to Statewide's allegations of harm as a disappointed bidder.

However, although neither Statewide nor McCafferty have standing to bring this action, we recognize that the question of standing is not an issue of subject matter jurisdiction and, therefore, we cannot raise it sua sponte. *Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599, 207 A.2d 861 (1965); *Erie Independence House, Inc. v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 358, 559 A.2d 994 (1989). Here, the Authority failed to raise standing as an issue in its preliminary objections, instead mentioning it for the first time in a brief footnote in its memorandum supporting the preliminary objections. Thus, the Authority has waived its opportunity to contest standing in this case.

wealth citizen, it has no rights under the Right to Know Act and, therefore, Count III must be dismissed for failure to state a cause of action.

 Finally, we note that even if Statewide had rights under the Right to Know Act, dismissal of Count III would be proper on jurisdictional grounds because Statewide brought its action in mandamus pursuant to our original jurisdiction. However, review of a denial of access to public records under the Right to Know Act must be brought to this court within our appellate jurisdiction. *Ryan.*

Accordingly, for the reasons set forth in this opinion, we sustain the Authority's preliminary objections and dismiss Petitioners' petition for review.

## ORDER

AND NOW, this 16th day of December, 1993, the preliminary objections by the Pennsylvania Convention Center Authority are sustained and the petition for review filed by Statewide Building Maintenance, Inc. and Kathy McCafferty is dismissed.