**Hayes A. HUNT, Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 10, 1997.

Decided July 21, 1997.

Hayes A. Hunt, petitioner, for himself.

Jill C. Fluck, Assistant Counsel, Camp Hill, for respondent.

Before SMITH and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

SMITH, Judge.

Hayes A. Hunt petitions for review of the denial by the Department of Corrections (DOC) of his request under the Act commonly known as the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1—66.4, for access to information relating to the imprisonment of Leon Moser. Hunt states six questions: (1) whether DOC's denial of Hunt's request for documents relating to the execution of Moser violated the Right–to–Know Act; (2) whether the execution of Moser was a "public" action; (3) whether Moser's prison records in whole

or in part are public records; (4) whether documents produced by DOC relating to the execution of Moser are public records; (5) whether some of Moser's prison records are considered to be data, compilations or summaries; and (6) whether any exception in the Right–to–Know Act applies to the documents requested. DOC asserts that Hunt's requests in part were not sufficiently specific and in part sought access to confidential, non-public material.

■ Leon Moser was executed by lethal injection on August 16, 1995. By letter of June 26, 1996, Hunt, a law student at Temple University, requested permission from DOC to "examine and/or copy any and all of Leon Moser's ... files from Graterford, SCI" under the Right–to–Know Act. Hunt asserted that Moser had no privacy right in the requested materials because he was dead. In a letter of August 16, 1996, Hunt stated that his original request included but was not limited to all documents provided by Moser to DOC, all documents provided by DOC to Moser, Moser's medical records and his mental health records.[1] The Chief Counsel of DOC responded by letter of September 5, 1996, denying the request and stating that the documents did not constitute "public records" within the definition of the Right–to–Know Act; that documents relating to Moser's medical condition and mental health could not be disclosed absent a release signed by Moser, and DOC was not aware of any such release; and that the documents "may be confidential or privileged under various provisions of state or federal statutory, regulatory or case law."

I

The Court turns first to DOC's assertion that both Hunt's first and second requests for information in part lacked sufficient specificity. DOC relies upon *Nanayakkara v. Casella,* 681 A.2d 857 (Pa.Cmwlth.1996), which was decided August 21, 1996, five days

after Hunt's second request. There an inmate made a written request to the records officer of his prison to examine his "inmate records." On his appeal from DOC's denial, this Court noted the broad general definition of "public records" provided in Section 1(2) of the Right–to–Know Act, 65 P.S. § 66.1(2), and also the several exceptions to that definition found in the same Section. The Court held that a person making a request has an obligation to identify with some specificity the type of information being sought in order for the agency to be required to provide access. The Court concluded that the request for "inmate records" encompassed some materials that would not be public records and others that would be; therefore, it was not a proper request for "public records" because it did not provide sufficient facts from which the Court could determine the type of records requested.

■ DOC notes that documents given by or to Moser might include, among other things, every request slip or grievance that he filed, statements of his account, commissary purchases and responses to his request slips or grievances. DOC asserts that Hunt's second written request is the type of non-specific request that this Court held was properly denied in *Nanayakkara.* In a reply brief Hunt concedes that his first request lacked sufficient specificity under *Nanayakkara* but contends that the second one did not. Hunt suggests that the more detailed 20–point list of items in his brief could be regarded as a separate request and DOC's brief as a denial, creating a new proceeding, which could be consolidated with the present case or remanded.

This case is presented in the Court's appellate jurisdiction. Section 4 of the Right–to–Know Act, 65 P.S. § 66.4, provides that any citizen who is denied the rights to inspect public documents and to make extracts, copies or photographs of them under Sections 2

---

1. In his brief Hunt makes extensive allegations concerning the circumstances of Moser's execution, including a claim that it violated an order by a judge of the federal district court to produce Moser in his courtroom in Philadelphia for a hearing. None of this material is contained in the certified record in this proceeding, which

consists of five relatively brief letters exchanged between Hunt and DOC concerning his requests described above. The Court may not consider material that is not part of the certified record on appeal. *Croft v. Unemployment Compensation Board of Review,* 662 A.2d 24 (Pa.Cmwlth.1995).

and 3, 65 P.S. §§ 66.2 and 66.3, may appeal to the appropriate court. Where a Commonwealth agency denies access, the proper procedure is the filing of a petition for review in this Court's appellate jurisdiction under Section 763(a)(1) of the Judicial Code, *as amended*, 42 Pa.C.S. § 763(a)(1), which provides for jurisdiction in this Court of appeals from Commonwealth agency actions. *Nanayakkara*. Hunt's suggestion here goes well beyond the mere substitution of parties that was denied in *Statewide Bldg. Maintenance, Inc. v. Pennsylvania Convention Center Authority*, 160 Pa.Cmwlth. 544, 635 A.2d 691 (1993). The Court declines the invitation to create a separate request, denial and appeal on the basis of the briefs in this proceeding and therefore does not reach the question of the status of the more specific items identified by Hunt for the first time in this appeal.

▮ A dismissal of Hunt's appeal on the basis of lack of specificity does not determine that any particular materials are not public records as to which access may be denied. The person making the request is free to make another, more specific request. No provision of the Right–to–Know Act limits a person seeking information to a single request; in fact, it is likely that someone granted access may learn in the course of inspection of other materials that he or she wishes to examine. The Court therefore dismisses Hunt's appeal in regard to his request for all documents given by DOC to Moser or by Moser to DOC and to other information not identified at all.[2]

Hunt is certainly correct in his implied contention that when a state agency regards a particular request as lacking sufficient specificity, it has a duty in good faith to communicate that opinion to the person making the request, so that the parties may attempt to resolve the question before resorting to an appeal. The tension between an agency's need for some specificity in order to respond to a request and a requesting person's desire to see as much as possible may be eased through good faith communication between them. When issues remain for appeal they will be narrower, and this Court will have a more useful record to consider.

Essentially the same reasoning applies to denials based upon exceptions to the definition of public records in Section 1(2) because of a prohibition against disclosure in statute law or order or decree of court or because disclosure would lead to the loss of federal funds or would operate to the prejudice or impairment of a person's reputation or personal security. An agency does not act in keeping with the spirit of the Right–to–Know Act when, as DOC did here, it denies access without identifying the authority it is relying upon and explaining how it applies to the requests involved. By failing to identify any authority specifically, such a response arguably fails to raise and preserve for appeal the question of the application of any particular authority. In view of the direct appeal to this Court under Section 4, with the record consisting simply of the request and the denial, there is no room for gamesmanship in an agency's handling of a Right–to–Know Act request.[3]

### II

▮ DOC's response to Hunt did provide a form of explanation for the denial of access to documents pertaining to Moser's medical

---

**2.** Without raising the issue in a counter-statement of the questions involved, in violation of Pa. R.A.P. 2112 and 2116, DOC also argues that, because the rights to examine and to make extracts of public records provided in Sections 2 and 3 of the Right–to–Know Act inure only to a "citizen" of the Commonwealth, Hunt must show that he is a citizen or his appeal should be dismissed on this ground. DOC is arguing, in effect, that Hunt must demonstrate that he has standing to bring his appeal. As was noted in *Statewide Bldg. Maintenance, Inc.*, however, standing is not an issue of subject matter jurisdiction. DOC failed to raise any challenge to Hunt's status as a citizen when it denied his

requests for access, and it has therefore waived the right to raise such a challenge on the present appeal.

**3.** DOC now cites the Criminal History Record Information Act, 18 Pa.C.S. §§ 9101—9183, and Sections 9733 and 9734 of the Sentencing Code, both *as amended*, 42 Pa.C.S. §§ 9733 and 9734, which concern disclosure of pre-sentence reports, but which were suspended by Pa. R.Crim. P. 1415 as being inconsistent with Chapter 1400 of the Rules of Criminal Procedure. Pa. R.Crim. P. 1404 now relates to disclosure of pre-sentence reports.

condition and mental health, stating that these could not be disclosed absent a release signed by Moser and that DOC was aware of no such release. Part of the definition of "public record" in Section 1(2) of the Right–to–Know Act includes any "minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons . . . ." As DOC notes, this Court has construed this as including any action that establishes, alters, abolishes or denies any rights, privileges and so on, and the term "fixing" personal rights has been held to mean "affecting" those rights. *Senk v. Board of Pardons,* 104 Pa.Cmwlth. 270, 521 A.2d 532 (1987). DOC does not dispute that Moser had rights to medical and mental health treatment while he was confined, but it disagrees that actions taken in the course of such treatment, as reflected in the records, are subject to public disclosure.

DOC cites Section 6155 of the Judicial Code, 42 Pa.C.S. § 6155, which it characterizes as recognizing a patient's interest in the confidentiality of medical records by granting him or her the opportunity to seek a court order preventing their disclosure. From that provision DOC deduces that medical records may not be disclosed absent a release. The Court notes that Section 6155 is found in Subchapter E., relating to medical records and their use in civil and criminal proceedings, of Chapter 61 of the Judicial Code, relating to rules of evidence. Section 6155 does not apply outside the context of the use of medical records as evidence in legal proceedings, and it states no requirement for a signed release.[4]

DOC now identifies Section 111 of the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. § 7111, as the source of its contentions regarding Moser's mental health records. Section 111(a), 50 P.S. § 7111(a), provides in general that "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone[,]" with certain exceptions not relevant here. As DOC notes, the Superior Court in *In Interest of Roy,* 423 Pa. Superior Ct. 183, 620 A.2d 1172 (1993), *appeal denied,* 536 Pa. 644, 639 A.2d 30 (1994), stated that the Mental Health Procedures Act is to be strictly construed. The Court held that under the plain language of Section 111, a son and heir of a decedent who had been subject to involuntary treatment could not waive the confidentiality of the decedent's inpatient treatment records. Thus the protection from disclosure in Section 111 does not end with a person's death.[5]

Under the facts of this case, the Court concludes that the medical and mental health records are not public records subject to disclosure under the Right–to–Know Act. Based on the foregoing, DOC's denial of access to Moser's medical and mental health records is affirmed.

### ORDER

AND NOW, this 21st day of July, 1997, the action of the Pennsylvania Department of Corrections in denying Hayes A. Hunt access to mental health records of Leon Moser is affirmed. Hunt's petition for review in regard to other forms of prison records is dismissed for lack of sufficient specificity in

4. DOC cites other statutes that could apply to prevent disclosure: the Confidentiality of HIV–Related Information Act, Act of November 29, 1990, P.L. 585, 35 P.S. §§ 7601—7612; Section 8 of the Pennsylvania Drug and Alcohol Abuse Control Act, Act of April 14, 1972, P.L. 221, *as amended,* 71 P.S. § 1690.108, relating to confidentiality of records; and 21 U.S.C. § 1175. Former 21 U.S.C. § 1175 was transferred and made part of the Public Health Service Act, 42 U.S.C. §§ 201—300gg–92, by Pub.L.No. 98–24, § 2(b)(16)(B), 97 Stat. 182 (1983), set forth at 42 U.S.C. § 290ee–3; it was omitted by Pub.L.No. 102–321, § 131, 106 Stat. 366 (1992), and re-placed by 42 U.S.C. § 290dd–2, relating to confidentiality of records of substance abuse programs assisted by agencies of the United States.

5. Hunt also argues that Moser was not "in treatment" in the weeks before he was executed, but rather was being diagnosed, solely to prepare him for execution. Hunt has cited no authority on this point, and the Court declines to accept the proposition that the confidentiality of the provision of mental health services may turn on an outsider's characterization, of whether those services constitute "treatment" or not.

his original request to require a response from the Department.