**CITY OF PHILADELPHIA, Philadelphia Police Department, Appellant,**

v.

**PHILADELPHIA BOARD OF LICENSE AND INSPECTION REVIEW, use of Matthew J. Craddock.**

**CITY OF PHILADELPHIA, Appellant,**

v.

**BOARD OF LICENSE AND INSPECTION REVIEW and David J. McCool.**

**CITY OF PHILADELPHIA, Appellant,**

v.

**BOARD OF LICENSE AND INSPECTION REVIEW and Howard Radwill.**

**CITY OF PHILADELPHIA, Police Department, Appellant,**

v.

**PHILADELPHIA BOARD OF LICENSE AND INSPECTION REVIEW, use of Alvin T. Rowland, Jr.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 16, 1995.
Decided Dec. 22, 1995.

---

Richard Feder, Deputy City Solicitor, for appellants.

No appearance, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and MIRARCHI, Senior Judge.

MIRARCHI, Senior Judge.

The City of Philadelphia, its Police Department and Department of Licenses and Inspections (collectively, City) appeal from four separate orders of the Court of Common

Pleas of Philadelphia County quashing *sua sponte* the City's appeals from the decisions of the Board of License and Inspection Review (Board) for lack of the City's standing.[1]

In cases docketed at 1499 C.D.1994 and 239 C.D.1995, the City building inspectors applied for a license to carry a firearm with the City Police Department, alleging that they needed a gun for protection because they were called upon to go to high crime areas at night. The Police Department denied the applications on the grounds that under the City policy, non-law enforcement personnel are not permitted to carry a weapon while performing their duties and that they failed to meet the requirements set forth in Section 6109(e)(2) of the Crimes Code, *as amended,* 18 Pa.C.S. § 6109(e)(2), for issuing a license to carry a firearm. On appeal, the Board found that the applicants met the requirements under Section 6109(e)(2) and reversed the Police Department's decisions.

In 1500 C.D.1994, the Department of Licenses and Inspections denied an application for a license to operate an existing newsstand on the ground that the newsstand exceeded the maximum dimensional limits set forth in Section 9–205(2)(b) and (8)(g) of the Philadelphia Code (Code). In 1501 C.D.1994, the Department issued a notice of violation, directing an operator of a newsstand to reduce his oversized newsstand to the dimensional limits. On appeal, the Board reversed the Department's decisions on equitable estoppel grounds.

The City then appealed the Board's decisions in all four cases to the trial court which raised the question of the City's standing *sua sponte.* Concluding that the City was not aggrieved by the Board's decisions and that the Board's decisions were not appealable

adjudications, the trial court quashed the appeals for lack of the City's standing. The City's appeals to this Court followed.

With respect to standing to obtain a judicial review of a local agency's decision, Section 752 of the Local Agency Law (Law), 2 Pa.C.S. § 752, provides:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).[2]

■ It is undisputed that the City and its departments fall within the definition of "person" under Section 752, which includes "a government unit." 2 Pa.C.S. § 101. Further, the Board is "a local agency" which is defined as "[a] government agency other than a Commonwealth agency." *Id.* For the purpose of determining the City's standing to appeal an adverse ruling of the Board, the City and the Board are considered separate entities. *City of Philadelphia v. Board of License & Inspection Review,* 139 Pa. Cmwlth. 240, 590 A.2d 79, *appeal denied,* 529 Pa. 625, 600 A.2d 540 (1991). Thus, the City's right to obtain judicial review of the Board's decisions under Section 752 of the Law depends upon whether the City has a "direct interest" in and is "aggrieved" by the Board's decisions, and whether the Board's decisions constitute "adjudications."[3]

■ The requirement that an interest be "direct" simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975); *Township of South Fayette v. Commonwealth,* 73 Pa.Cmwlth.

---

1. The appeals were consolidated by this Court's order dated May 8, 1995.

2. Section 933(a)(2) of the Judicial Code, 42 Pa. C.S. § 933(a)(2), grants each court of common pleas jurisdiction over "[a]ppeals from government agencies, except Commonwealth agencies, under [2 Pa.C.S. §§ 751–754] or otherwise."

3. The City argued before the trial court that the court improperly raised the standing issue on its own motion. Whether a party has standing to

maintain an action is not a jurisdictional question and, therefore, the court may not raise it *sua sponte. Beers v. Unemployment Compensation Board of Review,* 534 Pa. 605, 633 A.2d 1158 (1993); *Statewide Building Maintenance, Inc. v. Pennsylvania Convention Center Authority,* 160 Pa.Cmwlth. 544, 635 A.2d 691 (Pa.Cmwlth. 1993). On appeal, the City does not challenge the impropriety of the trial court's consideration of the standing issue on its own motion.

495, 459 A.2d 41 (Pa.Cmwlth.1983).[4] It is well established that an agency with statutorily invested functions, duties and responsibilities has a legislatively conferred interest in such matters and therefore has a standing to challenge the adverse decisions. *Pennsylvania Game Commission v. Department of Environmental Resources,* 521 Pa. 121, 555 A.2d 812 (1989); *Township of Upper Merion v. State Horse Racing Commission,* 145 Pa. Cmwlth. 82, 602 A.2d 459 (1992).

■ In the instant matters, the City Police Department has statutory duties and responsibilities of determining whether an application for a license to carry a firearm meets the requirements of 18 Pa.C.S. § 6109(e)(2).[5] Similarly, pursuant to Section 5–1002 of the Philadelphia Home Rule Charter (Charter) and Sections 9–105(2) and 9–205(9)(b) of the Code, the Department of Licenses and Inspections has powers and duties to enforce restrictions imposed by the Code and determine whether an application for a license meets all applicable standards. Hence, the City had direct interests in the matters before the Board and was aggrieved by the Board's adverse decisions.

■ The term "adjudication" under Section 752 of the Law is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101. An agency's action is an adjudication if its decision or refusal to act leaves a complainant with no other forum in which to assert his or her rights. *Wortman v. Philadelphia Commis-*

*sion on Human Relations,* 139 Pa.Cmwlth. 616, 591 A.2d 331 (1991).

■ Under the Charter, the Board, along with the Zoning Board of Adjustment and the Board of Building Standards, is placed in the Department of Licenses and Inspections. Section 3–100(f) of the Charter. However, under Section 5–1005 of the Charter, the Board is an independent tribunal charged with providing an administrative appeal procedure, in conformity with due process, to citizens who are adversely affected by actions of the City agencies.[6] Section 5–1005 provides in pertinent part:

> The Board of License and Inspection Review shall provide an appeal procedure whereby any person aggrieved by the issuance, transfer, renewal, suspension, revocation or cancellation of any City license or by any notice, order or other action as a result of any City inspection, ... shall upon request be ... afforded a hearing thereon by [the Board]. Upon such hearing the Board ... shall hear any evidence which the aggrieved party or the City may desire to offer, shall make findings and render a decision in writing. The Board may affirm, modify, reverse, vacate or revoke the action from which the appeal was taken to it.

"Decisions of the Board are to be binding upon the administrative agency of the City involved, subject, of course, to such further right of appeal to the courts as may exist." Annotations to Section 5–1005. Neither the Charter nor the Code provides any procedural step to be taken by the City or the citizens before seeking judicial review of the Board's

---

**4.** Under the traditional standing requirement, in order to be "aggrieved," one's interest must be substantial and immediate as well as direct. However, Section 752 of the Law and Section 702 of the Administrative Agency Law with the identical language, 2 Pa.C.S. § 702, require only that the injured interest be direct. *See Pennsylvania Game Commission v. Department of Environmental Resources,* 521 Pa. 121, 555 A.2d 812 (1989); *Nernberg v. City of Pittsburgh,* 153 Pa. Cmwlth. 219, 620 A.2d 692 (1993).

**5.** In a city of the first class, an application for a license to carry a firearm must be filed with the chief of police of the city. 18 Pa.C.S. § 6109(b). Section 6109(e)(2) provides: "In a city of the

first class, a license shall be issued only if it additionally appears that the applicant has good reason to fear an injury to the applicant's person or property or has any other proper reason for carrying a firearm and that the applicant is a suitable individual to be licensed."

**6.** Section 8–403 of the Charter provides "each board or commission connected with a department shall exercise its powers and perform its duties independently of the departmental head." "[T]he head of a department with which a board or commission is connected is not to direct how the board or commission shall perform its functions." Annotation to Section 8–403.

decisions. Hence, the Board's decisions constituted final determinations of the appeals and therefore "adjudications" under Section 752 of the Law subject to judicial review.[7]

The trial court concluded, however, that the Board's decisions lacked finality because the City solicitor may review and veto any rulings of the Board on the ground of a *legal* error. In so concluding, the trial court relied upon Section 8–410 of the Charter setting forth binding effect of the City Solicitor's legal advice over officers and agencies of the City. Section 8–410 provides in pertinent part:

> Whenever any officer, department, board or commission shall require legal advice concerning his or its official business or whenever any legal question or dispute arises … it shall be the duty of such officer, department, board or commission, to refer the same to the Law Department.

> It shall be the duty of any officer, department, board of commission having requested and received legal advice from the Law Department regarding his or its official duty, to follow the same; and when any officer shall follow the advice given him in writing by the Law Department he shall not be liable in any way for so doing upon his official bond of otherwise.

The purpose of Section 8–410 was to "prevent the practice of each officer and agency having its own counsel" and establish thereby "an effective and well organized, central law agency." Annotation to Section 8–410. It neither mandates the City Solicitor to review decisions of each and every agency performing independent adjudicatory functions nor grants the City Solicitor a "veto" power over those decisions, as the trial court suggests. The trial court's conclusion that the City's right to appeal was contingent upon the City

Solicitor's review of the Board's decisions ignores the status of the Board as an independent tribunal specifically granted by Section 5–1005 of the Charter.[8]

To support its conclusion, the trial court relied upon *H.A. Steen Industries, Inc. v. Cavanaugh,* 430 Pa. 10, 241 A.2d 771 (1968). In *H.A. Steen,* the Board ordered the Department of Licenses and Inspections to issue the sign permits. The City Solicitor then issued an opinion to the Board, stating that the Board's issuance of the permits without required approval of the City Art and Fairmount Park Commissions was illegal. The Pennsylvania Supreme Court held that under Section 5–1005 of the Charter, the Board does not have a legislative power to grant variances and that the Board's order was therefore unenforceable in an action in mandamus. In so holding, the Court stated that under Section 8–410 of the Charter, the Board is required to apply the *law* determined by the City Solicitor.

█ *H.A. Steen* is distinguishable and therefore inapplicable to the instant matters. The City Solicitor did not issue an opinion interpreting any applicable provisions of the Code, as in *H.A. Steen.* Moreover, the Board made the *factual* determinations as to whether the applications satisfied all applicable standards for issuing licenses. Under the Charter, the City Solicitor is not granted a status of an administrative review board and consequently does not have authority to review such factual determinations. Finally, *H.A. Steen,* decided prior to the enactment of the Law, did not involve the issue of the City's standing to challenge the Board's decision in an administrative appeal filed pursuant to Section 752 of the Law. Rather, the issue was whether the Board's order was enforceable in an action in mandamus. Con-

---

7. The trial court concluded that the City lacked standing in 1500 C.D.1994 because the Department of Licenses and inspections' denial of a license to operate the newsstand constituted an appealable adjudication. However, the Department's decision was not an adjudication subject to judicial review under Section 752 of the Law because appeal from the Department's decision

must be filed with the Board first, pursuant to Section 5–1005 of the Charter and Section 9–103(2) of the Code.

8. Under the trial court's theory, even the aggrieved citizens would not be allowed to appeal to the trial court until the City Solicitor approves or disapproves the Board's decisions.

sequently, *H.A. Steen* does not support the trial court's conclusion.[9]

Accordingly, the orders of the trial court quashing the City's appeals are reversed, and the matters are remanded to the court for its consideration of the merits.

### ORDER

AND NOW, this 22nd day of December, 1995, the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matters are reversed, and the matters are remanded to the court for its consideration of the merits.

Jurisdiction relinquished.

---

9. In administrative appeals, the City Solicitor's office has a dual role of representing the City's various departments and also providing legal advice to the Board. The guarantee of due process of law mandates that if more than one function is reposed in a single administrative entity, walls of division be constructed which eliminates the threat or appearance of bias. *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). As long as the functions of the City Law Department in the Board's proceeding are clearly divided, there will be no commingling of prosecutorial and adjudicatory roles. *Id.* However, the City Solicitor's additional role of reviewing the Board's decisions, as suggested by the trial court, would present additional difficulties inherent in dual representations.