## City of Philadelphia, Department of Revenue v. The Tax Review Board of the City of Philadelphia to the Use of Temple University

C.P. of Philadelphia County, no. 9504-0133.

*Margarete Pawlowski,* for petitioner.
*Sally P. Schreiber,* for respondent.

HERRON, *J.,* February 13, 1996—

## BACKGROUND

The petitioner, City of Philadelphia, Department of Revenue, is appealing a decision by the Philadelphia Tax Review Board in favor of respondent, Temple University.

Temple filed a "petition for refund appeal" with the Tax Review Board in October 1994. In its petition, Temple requested, inter alia, that the City's decision to impose a parking tax on Temple's parking decal registration fees be reversed.[1]

On March 14, 1995, the Tax Review Board held a public hearing on this petition and thereafter issued its findings of fact. The board noted that Temple offered various parking lot alternatives to its staff, faculty, students and guests at its campus in North Philadelphia. A designated lot was set aside for visitors who were required to pay a $5 fee. Temple paid a parking tax on these fees.[2]

---

1. See petition for refund appeal by Temple University, schedule 2.

2. Philadelphia Tax Review Board, finding of fact 2.

Temple also offered a "guaranteed access parking lot" to its staff and students. Access to this lot was paid for either through staff payroll deductions or by monthly student fees. Temple likewise paid a parking tax on the fees generated in this guaranteed access lot.[3]

The third parking lot alternative—*"token parking"*—is at the heart of the present controversy between Temple and the City. The Tax Review Board's finding of fact on this parking lot alternative is thus critical. In particular, the board found:

"There is 'token parking' for students and staff. *This requires the annual purchase of a $30 decal* which then allows parking in a designated lot with the payment of tokens each time the person wishes to park his or her car. There is no guarantee that a space will always be available to the decal owner even with a token.

"The decal is for identification and registration purposes. The $30 fee to purchase the decal is to cover the registration costs incurred by petitioner in organizing the parking requirements of the thousands of drivers who need to park their cars at the university.

"Petitioner pays the parking tax on the money generated from the sale of tokens which cover the cost of actually parking, but not from the sale of the decals." *Id.* at finding of fact 4. (emphasis added)

On the basis of this finding of fact, the board reached the following conclusion of law:

"Petitioner is not required to pay the parking tax on fees generated from the sale of decals which do not include the cost of parking but which are for registration and information purposes." *Id.* at conclusions of law.

---

3. *Id.* at finding of fact 3.

Upon review of the relevant case and statutory law, this court concludes that the Tax Review Board made an error of law in deciding that Temple is not required to pay a parking tax on fees generated on the sale of decals which, under the board's own findings of fact, were "required" of any person seeking to park in Temple's "token parking" lot.

## TAX REVIEW BOARD'S APPLICATION OF LAW TO FINDINGS OF FACT

The crucial issue in this controversy is whether the Tax Review Board properly concluded that Temple "is not required to pay the parking tax on fees generated from the sale of decals which do not include the cost of parking but which are for registration and information purposes."[4]

The standard of review for a court reviewing a ruling by a local agency is stringent:

"In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant or is not in accordance with the law, or that the provisions of subchapter B of chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa.C.S. §754(b) (1995).

---

4. Philadelphia Tax Review Board, findings of fact at conclusions of law.

Hence this court is bound by the board's findings of facts; its review is limited to determining "whether constitutional rights were violated, an error of law was committed or the board's findings of facts were not supported by substantial evidence."[5]

An analysis of the relevant parking lot tax code provisions[6] is thus an essential first step in analyzing the viability of the Tax Review Board's conclusions of law. Ordinances and codes are subject to the same rules of construction as statutes. They should be interpreted whenever possible to give "effect to all of its provisions." *Appeal of Neshaminy Auto Villa Ltd.*, 25 Pa. Commw. 129, 133, 358 A.2d 433, 435 (1976). If a term is defined in a code or statute a court is bound by this definition even if it conflicts with common usage. *Id.* However, if "the statute or ordinance does not specifically define the term sought to be construed, and the words are one in common usage, they are to be given their common usage meaning." *Hankin v. Upper Moreland Twp.*, 94 Pa. Commw. 210, 214, 503 A.2d 109, 111 (1986), *alloc. granted,* 511 Pa. 617, 515 A.2d 898 (1986). See also, *Philadelphia Housing v. Commonwealth, Labor Relations Board,* 508 Pa. 576, 581, 499 A.2d 294, 297 (1985).

---

5. *Insinger Machine Co. v. Philadelphia Tax Review Board,* 165 Pa. Commw. 344, 346 n.4, 645 A.2d 365, 366 n.4 (1994), *cert. denied,* 540 Pa. 624, 657 A.2d 494 (1995), *cert. denied,* 116 S.Ct. 303 (1995) (citing 2 Pa. C.S.A. 754(b); *City of Philadelphia, Department of Revenue v. Tax Review Board of Philadelphia to the Use of Sawin System Inc.,* 157 Pa. Commw. 43, 628 A.2d 1220 (1993).

6. See *e.g.,* Philadelphia Code §19-1201 through 19-1206 (Parking Tax). *The Parking Tax Regulations of the City of Philadelphia,* code section 19-1200 (July 1989) is also an essential authority.

("Where the language of a statute is explicit and clear, it has been a long standing principle of this court not to disturb the plain meaning of that language by resorting to rules of statutory construction.")

The Philadelphia Code parking tax provisions set forth the following criteria for imposing a parking tax:

"There is hereby imposed upon every person parking or storing a motor vehicle in or on any parking facility in the City on July 1, 1989 and thereafter, a tax of 15 percent of the amount charged for the transaction, which tax shall be collected by the operator from the person parking or storing the vehicle, and shall be paid over to the City as provided herein."[7]

The tax rate is thus imposed on "the amount charged for the transaction." The term "transaction" is specifically defined in the code:

"Transaction. The act of parking or storing a motor vehicle in or on a parking facility in the City, for a financial consideration, or its equivalent under an express or implied contract." Philadelphia Code, Parking Tax §19-1201(4).

The code further provides that the payment of tax will be computed on the "gross receipts from all trans-

---

7. Philadelphia Code, Parking Tax §19-1202(1)(b). See also, Philadelphia Code, Parking Tax §19-1202(1)(a) for tax rates for 1986 and thereafter. The exact rate of tax to be imposed under code section 19-1202 is unclear due to provisions for potential court rulings. The Parking Tax Regs., fortunately, are clear:

"The parking tax is imposed on every person parking or storing a motor vehicle in or on a parking facility in the City on or after July 1, 1986, at the rate of 17.5 percent of the amount charged for the transaction and on or after July 1, 1987 at the rate of 15 percent of the amount charged for the transaction." Philadelphia Parking Tax Regs. §201(3) (July 1989).

actions."[8] The term "gross receipts" is not specifically defined in the relevant parking tax code provisions. Significantly, neither party offers a definition of this key term. Where terms are undefined but clear, they should be interpreted according to their common usage. See *e.g., Hankin v. Upper Moreland Twp., supra* at 214, 503 A.2d at 111. (Where the statute or ordinance does not specifically define the term sought to be construed, and the words are ones in common usage, they are to be given their common usage meaning.) The term "gross" commonly refers to "an overall total exclusive of deductions." Webster's Third New International Dictionary, Unabridged (1986). The term "gross receipts" is defined in *Black's Law Dictionary,* 6th ed. (West 1990) as "(t)he total amount of money or the value of other consideration received from selling property or from performing services."

Temple argues that the board did not err when it concluded that the fees charged for the parking decal should not be included as an amount charged for the transaction of parking because it made a factual de-

---

8. Philadelphia Code, Parking Tax §19-1203. This section provides: *"Returns and payment of tax.*

"(1) Every person required to collect the tax imposed by this chapter shall at such intervals as the commissioner shall establish by regulations, make and file with the department a return on a form furnished by or obtainable from the department setting forth:

"(a) *the gross receipts from all transactions;*

"(b) the total number of cars parked during the preceding calendar month;

"(c) such other pertinent information as the department may by regulation or otherwise require;

"(d) the amount of tax due as imposed by this chapter." (emphasis added)

termination that the decal fee was not a charge for parking.[9]

Temple is correct that the board made the finding of fact that the "decal is for identification and registration purposes."[10] The board also made the finding of fact that the purchase of this $30 decal was "required" before a student or staff member could park in the token parking lot. Where the board erred was in applying the code to these facts. The code provides that a parking tax will be imposed on *"the amount charged* for the transaction."[11] In calculating the tax due, the taxpayer must set forth the *"gross receipts* from all transactions."[12] Nowhere does the code exclude from its definition of "gross receipts" expenses incurred for "identification and registration purposes." The Parking Tax Regulations, however, contain a section that specifically focuses on what receipts should be excluded from "gross receipts from the parking transaction." See Philadelphia Parking Tax Regs. §102.

Under section 102 of the regulations, the following "excluded receipts" would not fall within "gross receipts:"

*"Excluded receipts.*

"The gross receipts derived from the sale of liquid fuels, washing, polishing and mechanical servicing or motor vehicles are not includable as gross receipts from the parking transaction." Philadelphia Parking Tax Regs. §102.

Neither the code nor its regulations exclude "identification and registration" expenses from their defi-

---

9. Appellee's (Temple) reply brief at 7-8.
10. Philadelphia Tax Review Board, finding of fact 4.
11. Philadelphia Code, Parking Tax §19-1202(1)(b).
12. Philadelphia Code, Parking Tax §19-1203(1)(a).

nition of "gross receipts" from the parking transaction. On the contrary, the regulations contemplate that an inevitable aspect of operating a public parking lot is providing for the registration or identification of vehicles entrusted to the lot. The regulations, for instance, outline in careful detail criteria for the issuance of claim checks. Parking lot operators must issue "distinctive" tickets which "shall be kept in numerical order." The format of the claim checks is also dictated: each claim check must consist of three parts. See *e.g.,* Philadelphia Parking Tax Reg. §402.

For all of these reasons, it was an error of law for the board to disregard the provisions of the Philadelphia Code (parking tax) and its regulations by concluding that Temple was not required to pay parking tax on fees generated from the sale of decals for the "token parking" lot.[13]

## STANDING ISSUE

Temple argues forcefully that the City lacks standing to challenge a decision by its own administrative review board.[14] Relying on Local Public Agency Law, Temple

13. As a matter of common sense, the only reason a student or staff member would purchase a decal would be to park in the "token parking" lot. As the board noted in its findings of fact, the purchase of this decal was required for parking in the "token parking" lot. Hence, the gross receipts from parking in the "token only lot" would derive from fees generated by the sale of both the tokens and the decals.

14. Clearly, this standing argument raises a threshold issue. In light of a recent opinion by the Pennsylvania Commonwealth Court, however, this issue is now clearly secondary to the other issues raised in this controversy. See *City of Philadelphia, Philadelphia Police Department v. Philadelphia Board of License & Inspection Review,* 669 A.2d 460 ( Pa. Commw. 1995).

asserts that the City cannot be " 'aggrieved' by its own decision." [15]

The Local Agency Law establishes the following criteria for seeking judicial review of a local agency's decision:

"Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to title 42 (relating to judiciary and judicial procedure)." 2 Pa.C.S. §752 (1995).

Under this law, the City and its departments fall within the definition of "person." [16] To demonstrate that it is aggrieved by the Tax Review Board's ruling, the City must "be able to show a direct and substantial interest in the litigation." *City of Philadelphia v. Board of Licensing & Inspection Review to the Use of Parkway Corp.,* 139 Pa. Commw. 240, 254, 590 A.2d 79, 86 (1991), *appeal denied,* 529 Pa. 625, 600 A.2d 540 (1991).

The City and its Department of Revenue clearly have an interest in adverse rulings by the Tax Review Board that might deprive it of revenue. The Philadelphia Home Rule Charter specifically imposes the following function on the Department of Collections (presently Department of Revenue):

*"Collection of income and other taxes:* The department shall collect the City income tax and any other taxes which now are or may hereafter be imposed by the Council in such manner as shall be prescribed by

---

15. Appellee's reply brief at 1 (citing 2 Pa.C.S. §752).

16. See the definitions in 2 Pa.C.S. §101: " 'Person.' Includes a government unit or an agency of the federal government."

ordinance." Philadelphia Home Rule Charter, tit. 351 Pa. Code §6.6-201(b).

More specifically, the Philadelphia Code in its provisions relating to parking tax, authorizes the City to impose a tax on "every person parking or storing a motor vehicle in or on any parking facility in the City." Philadelphia Code, Parking Tax §19-1202(1)(b). Hence, the City would be "aggrieved" by a Tax Review Board ruling that impinged on its ability to collect these taxes.

In further support of its argument that the City lacks standing to bring this appeal, Temple asserts that the Tax Review Board and the Department of Revenue lack an independent existence. The board is a mere " 'creature' of the department, albeit one created for aggrieved taxpayers." [17]

The Philadelphia Home Rule Charter, however, offers compelling authority to the contrary of these assertions. It provides, for instance, that boards should function independently from their departments:

"8.8-403 *Departmental boards and commissions.*

"Except as otherwise provided in this charter, each board or commission connected with a department shall exercise its powers and perform its duties independently of the department head and officers but shall account to the department for the expenditure of money. Each such department shall in all cases have the right to examine the books, records and accounts of its departmental boards or commissions." Philadelphia Home Rule Charter, tit. 351 Philadelphia Code §8.8-403.

---

17. Appellee's (Temple) reply brief at 2.

Moreover, the section of the Home Rule Charter dealing specifically with the Tax Review Board outlines its independent role vis a vis the executive branch of the government:

"The Tax Review Board is to be the official agency of the City *to which taxpayers may appeal decisions of the executive branch of the government affecting their tax liability.*" Philadelphia Home Rule Charter, tit. 351 Pa. Code §6.6-207, purpose note.

In another line of attack, Temple asserts that the City lacks standing in this case to appeal the adverse ruling of the Tax Review Board because under the Home Rule Charter the City's Law Department has the duty to advise both the departments and the boards. Temple argues that since in this case the Law Department has already argued the Department of Revenue's case to its own board, it should cease all further action once it has received an adverse ruling.[18]

A weakness in this analysis, however, is that the Philadelphia Code sets forth the following criteria for appeal of rulings by the Tax Review Board:

*"Appeal from decision of Tax Review Board.*

"(1) Decisions of the Tax Review Board pertaining to compromises and waiver of interest or penalty shall be final and conclusive and shall not be the subject of further review.

"(2) *Other decisions of the Tax Review Board may be appealed to any court of competent jurisdiction within 30 days after the mailing of notice of such decision or action to the petitioner or his attorney by the Tax*

---

18. Appellee's (Temple) reply brief at 4-5.

*Review Board.*" Philadelphia Code §19-1706. (emphasis added)

This criterion for appeal clearly is neutral on its face. It is not limited to taxpayers but can clearly encompass the City or its department. Indeed, the Pennsylvania Commonwealth Court specifically relied on this language in concluding that the City should appeal adverse rulings by the Tax Review Board to the Court of Common Pleas. See *Robeson v. Philadelphia Tax Review Board,* 13 Pa. Commw. 513, 517, 319 A.2d 201, 203 (1974). ("The ground for the city's request for rehearing was clearly one which could have been advanced to the Court of Common Pleas on appeal.")

Finally, the Commonwealth Court, in a recent opinion issued after briefs were submitted in the instant case, provides precedent to the contrary of Temple's general argument that the City lacks standing to appeal an adverse decision of a board to the Court of Common Pleas. In *City of Philadelphia, Philadelphia Police Dept. v. Philadelphia Board of Licensing & Inspection Review,* 669 A.2d 460 (Pa. Commw. 1995), the Commonwealth Court concluded that the City of Philadelphia, its Police Department and the Department of Licenses and Inspections had standing to appeal adverse rulings by the Board of License and Inspection Review to the court of common pleas. While the Board of License and Inspection Review is obviously distinct from the Tax Review Board, the varied strands of the Commonwealth Court's analysis are relevant to the issues raised by Temple.

## CONCLUSION

For all of the reasons set forth above, the decision of Philadelphia Tax Review Board in this matter is reversed.

## ORDER

And now, February 13, 1996, for the reasons set forth in the contemporaneously filed opinion, it is hereby ordered that the ruling by the Philadelphia Tax Review Board granting respondent Temple University's petition for refund appeal is reversed.

