# Killpatrick's Appeal.

1. Where a guardian makes advances to his wards and repairs their property, without previous order of court, he takes the risk of being surcharged for the same; but if the advances and repairs thus made are afterwards ratified and approved by the court, as necessary and proper, he is relieved from liability.

2. Patterson's Appeal, 8 Out., 369, followed.

April 27th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Erie county :*   Of July Term, 1885, No. 96.

Appeal of John Killpatrick, as next friend of Mary Belle Killpatrick and Hattie May Killpatrick, minor children of Daniel Killpatrick, deceased, from a decree of said court dismissing his exceptions and confirming the report of the Auditor appointed to re-state the account of Thomas E. Kendrick, guardian of said minors.

The following are the facts as found by T. A. Lamb, Esq., Auditor:

Daniel Killpatrick died December 13th, 1876, leaving surviving him a widow, Harriet E. Killpatrick, and two children, Mary Belle Killpatrick and Hattie May Killpatrick.

Letters of administration on his estate were issued to the widow, Harriet E. Killpatrick, and C. K. Riblet, and shortly after Killpatrick's death Thomas E. Kendrick was appointed guardian of the children, they then being minors under fourteen years of age.

The administrators proceeded with the settlement of the estate, and April 6th, 1877, filed a final account.

To this account exceptions were filed March 18th, 1878, in the name of the guardian, although from the evidence it appears that John Killpatrick caused them to be filed without authority from the guardian.

By these exceptions it was sought to surcharge the administrators with some $1,673.10, $1,000 of which was for furniture.

The guardian made some examination as to the exceptions, and finally being satisfied that they were not justified, on September 24th, 1878, asked leave to withdraw them, which was granted by the Court, and the estate settled in accordance with the account filed.

February 6th, 1882, the guardian, Thomas E. Kendrick, filed his account.

To this John Killpatrick as the uncle and next friend of the minors, filed exceptions. The date of filing is not noted thereon, but it seems to have been March 4th, 1882.

In the exceptions it was alleged that separate accounts should have been filed with each minor; that the guardian had not charged himself with all money received, nor with all rents, nor with all interest, and that the guardian should not be allowed credit for money paid for repairs, nor ditching, nor services.

These exceptions were referred to your Auditor.

March 27th, 1882, the said Killpatrick, as next friend of the minors, obtained leave of the court to file, *nunc pro tunc*, as of March 4th, 1882, additional exceptions, as follows:

1. " The said guardian has not accounted for the personal property belonging to the wards which has come into his hands and under his control."

2. " The said guardian should be surcharged in the sum of $2,000 for losses sustained by his wards through the gross negligence of him, the said guardian."

These exceptions were also referred to your Auditor.

The exceptants allege that the guardian should have sur-

charged the administrators of Daniel Killpatrick, and the gross negligence complained of arises from his refusal to attempt so to do, and permitting the account filed by them to be confirmed.

The first of these exceptions filed March 4th, 1882, is dismissed. It undoubtedly is the better practice to file separate accounts with each ward, but I do not find that it is absolutely necessary so to do. Weyand's Appeal, 12 P. F. S., 198.

The second, third, and fourth exceptions, filed March, 1882, are also dismissed, no testimony having been offered to sustain the exceptions of either of them.

The fifth exception is as follows:

"The said guardian is not entitled to any credits for money paid for lumber, nails and other materials used in repairing and constructing buildings on the lands belonging to his wards."

There has been much testimony taken as to the repairs on the buildings and the construction of a shed and ice house. It is impossible almost to state the testimony here at length.

On the part of the exceptant it is contended that no such amount of repairs has been made as charged for; and further, that, as they were made without the order of court, the guardian is not entitled to credit therefor.

The accountant alleges not only that the repairs charged for were made, but that no more were made than was absolutely necessary to save the property from waste.

Upon a careful examination of the whole matter, I am of the opinion that not only was the guardian justified in making the repairs on the buildings which he caused to be made, but that it was his duty so to do. It is impossible, from the evidence offered, to come to any other conclusion than that these repairs were greatly needed to save the property from absolute waste. The guardian seems to have acted with good judgment, and with no other object in view than the welfare of his wards.

So much, therefore, of this exception as relates to repairs, or money expended therefor, is dismissed.

This exception also covers expenditures for an ice house and a shed erected for the protection of the barnyard from the winds.

The evidence, or rather the weight of it, shows this shed to have been necessary, although it appears that for some years at least prior to Daniel Killpatrick's death none had been there.

The ice house is spoken of as a necessity by some and a great convenience by others. I find that the shed was neces-

sary to the proper protection of the stock, and the ice house a great convenience.

Both, however, were new erections, and neither was absolutely necessary. Under these circumstances I think the guardian should be charged with their cost. I feel reluctant so to decide, because if application had been made to the court I have no doubt the expenditures would have been sanctioned; but under the rule laid down in Ebert v. Ebert, 5 P. F. S., 110, and in Scott on the Intestate Law, pages 74, 75 and 83, and cases cited in the notes, I do not see how any other conclusion can be arrived at. The money was not expended in repairs but in new erections not absolutely necessary to the due enjoyment of the estate.

For the same reason the sixth exception must be sustained, and the guardian surcharged with money paid out for the tile and ditching.

There is no doubt that this expenditure greatly benefited the estate, and was one which the court would have approved of if requested so to do. But, under the rule as established in this Commonwealth, such expenditures cannot be made without the sanction of the court. The Auditor cannot act in the place of the court. Indeed, it may be a question whether the court can sanction such improvements after they have been made.

The Auditor also directed the costs of the proceedings to be paid out of the funds of the estate.

To this report both the accountant and the exceptant filed exceptions.

The exceptions of the accountant were sustained, and the exceptions of the exceptant were dismissed, the Court (GALBRAITH, P. J.,) filing the following opinion:

The exceptions in this case were filed by John Killpatrick, an uncle of the wards, and who appears entirely as a volunteer and without any interest whatever, except such as his relationship to the minors may be presumed to give him. No dissatisfaction appears to have been expressed by the mother of the minors, with the management of their interests by the guardian, nor by the wards themselves, who are now of an age to understand business matters and quite competent, in fact, although not in law, to object to any mismanagement of their interests.

Without stopping to discuss the question raised as to the right of the exceptant to appear as objecting to the account, the question raised will be decided as if the exceptant had been designated as next friend by the court and thus authorized to appear on behalf of his nieces.

The Auditor was undoubtedly right in his ruling as to the

amount charged for repairs and in dismissing the exceptions to the items charged for money thus expended.

It is doubtless true that as a general rule a guardian cannot legally charge for improvements made upon the land of his ward, without an order of Court permitting such expenditure.   As said in the case of Ebert *v.* Ebert, 5 P. F. S., 120, the guardian makes such improvements at his own risk, otherwise he might improve his wards out of their property.   But it does not follow from this that when improvements have been judiciously made in good faith, the court may not afterwards sanction them, and allow for the moneys thus honestly expended.   It is all within the sound discretion of the Orphans' Court.   Here the evidence clearly shows that the shed was necessary, and the ice house a great convenience.   The Auditor, in his opinion, says that he decides to surcharge the guardian with the amount of these items with reluctance, and expresses the belief that if an application had been made to the Court the expenditures would have been sanctioned.

. Now, while the Auditor, in the absence of an order of Court, felt himself constrained to decide against the allowance of the items in question, there having been no previous order of the Court permitting such improvements, it is in the power of the Court to prevent the injustice which would follow from surcharging the accountant with the amounts thus judiciously and fairly spent for the benefit of his wards, now to approve and sanction his cause by allowing the disputed items as the Auditor could not do.   Accordingly the exceptions, on part of the guardian, are sustained and the expenditures approved.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

The only remaining question is that of the disposition of the costs.   The Auditor at first directed that John Killpatrick, the exceptant, should pay four fifths of the costs and Thomas E. Kendrick, the guardian, the remaining one fifth.   He afterwards changed this direction and reported that the costs should all be paid from the funds.   This is the same as ordering that the wards, who, with their mother, have been opposed from the first to these proceedings, should have all the expenses of a litigation they had nothing to do with and which their mother and nearest friend persistently discountenanced ; a litigation which, as appears by the evidence and by the report of the Auditor, started out with allegations of wrong and collusion, which have entirely failed of proof, and with charges of errors in the account as against the wards which the evidence has not established.   The exceptant is a mere volunteer, and without any legal interest in the matters involved.   He has failed to establish the case alleged by him, and there would seem to be no other logical or proper conclu-

sion than that the costs should be paid by him. It is therefore ordered that the account be referred back to the Auditor for re-statement according to this decision, and that John Killpatrick pay the costs of the proceeding. The Auditor restated the account in accordance with the opinion and reported the same. His report was confirmed.

John Killpatrick thereupon took this appeal, assigning for error the dismissal of his exceptions, and the comfirmation of the Auditor's report.

*S. L. Gibson* (*E. P. Gould* with him), for appellant.—In the matter of Miller's Estate, 1 Barr, 326, this Court held that where a guardian had expended his ward's money in making proper improvements to his ward's realty, without an order of Court, it was error for the Court to subsequently sanction such expenditures. In that case the Court say, "power to convert a ward's estate ought not to be assumed in any case; and to sanction it under any circumstances would encourage guardians to act independently of the Court." To the same effect is Snodgrass's Appeal, 1 Wright, 377. If these cases present the law, as it is, the Court below erred in allowing the guardian credit for expenditures made in improving his wards' land.

*Davenport & Griffith*, for appellee, were not heard.

The opinion of the court was filed May 10th, 1886.

PER CURIAM. There is no merit in this appeal. No collusion is shown between the guardians and other persons. Although the repairs and advances were made without previous order of Court, yet they were afterwards ratified and approved by the Court as necessary and proper. The guardian took the risk of being surcharged for making these payments without being so authorized; yet subsequent approval thereof by the Court relieves him from liability. There is no error in the decree: Patterson's Appeal, 104 Pa. St., 369.

> Decree affirmed and appeal dismissed at the costs of the appellant.