In re ESTATE OF Eugenia SCHRAM.

Appeal of ALLEGHNEY COUNTY, The Allegheny County Department of Aging, the Allegheny County MH/MR Program, the John J. Kane Regional Center, Ed Haberchak and the Allegheny County Law Department, Appellants.

In re ESTATE OF Charles C. BLAKE.

Appeal of ALLEGHNEY COUNTY, The Allegheny County Department of Aging, the Allegheny County MH/MR Program, the John J. Kane Regional Center, Ed Haberchak and the Allegheny County Law Department, Appellants.

In re ESTATE OF Ruby C. PRICE.

Appeal of ALLEGHNEY COUNTY, The Allegheny County Department of Aging, the Allegheny County MH/MR Program, the John J. Kane Regional Center, Ed Haberchak and the Allegheny County Law Department, Appellants.

In re ESTATE OF Clifford CLAYTON.

Appeal of ALLEGHNEY COUNTY, The Allegheny County Department of Aging, the Allegheny County MH/MR Program, the John J. Kane Regional Center, Ed Haberchak and the Allegheny County Law Department, Appellants.

In re ESTATE OF Elmer PICARD.

Appeal of ALLEGHNEY COUNTY, The Allegheny County Department of Aging, the Allegheny County MH/MR Program, the John J. Kane Regional Center, Ed Haberchak and the Allegheny County Law Department, Appellants.

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.
Decided June 30, 1997.

Amy M. Dolan, Pittsburgh, for appellants.

Richard F. Rinaldo, Pittsburgh, for appellees.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

In these consolidated appeals, the Allegheny County Department of Law (department) appeals from the orders of the Orphans' Court Division of the Court of Common Pleas of Allegheny County (trial court) dismissing its exceptions to the court's orders confirming the final accounts submitted by Guardianship Services of Allegheny County, Inc. (GSAC) and Elderly Citizens Resource Center, Inc. (ECRC), ordering distribution of the estates, and granting GSAC's and ECRC's motion for counsel fees. We affirm.

The facts of these cases may be summarized as follows. Between 1989 and 1992, agents of GSAC and ECRC were appointed by the trial court to be the permanent guardians of the estates of the incapacitated individuals involved in the instant cases under the Probate, Estates and Fiduciaries Code (Code), 20 Pa.C.S. §§ 5501—5555. On August 30, 1994, pursuant to section 5553(a) of the Code,[1] the trial court appointed GSAC as

---

1. Section 5553(a) of the Code provides, in pertinent part:

 § 5553. Guardianship services

 (a) In general.—The guardianship support agency shall be available to serve as guardian of the estate or of the person, or both, of an incapacitated person when no less restrictive alternative will meet the needs of the individual and when no other person is willing and qualified to become guardian. The agency itself may be appointed guardian and no individual need be specified by the court. If appointed, the guardianship support agency shall have all of the powers and duties of a corporate

successor guardian to these incapacitated individuals.

On December 29, 1994, GSAC filed petitions for leave to resign as guardian and requested the immediate appointment of an emergency guardian for each of the incapacitated individuals. In the petitions, GSAC alleged that due to a loss of revenue, it was financially distressed and no longer had sufficient personnel to continue to perform its fiduciary duties. In sum, GSAC alleged that it was concluding all agency operations by December 31, 1994.

As a result, on December 29, 1994, the trial court issued orders appointing a successor guardian through Allegheny County's guardianship program for each of the incapacitated individuals. The orders also instructed GSAC to transfer and deliver to the successor guardians all estate assets, records, and other documentation and materials pertaining to the incapacitated individuals, and to file final accounts of its administration of the incapacitated individuals' estates.[2]

Subsequently, pursuant to the court orders, final accounts for the estates were filed with the trial court. The department, as legal counsel to the successor guardians and the Allegheny County Department of Aging, filed objections to the final accounts based,

inter alia, on irregularities in the files. Through the objections the department sought the imposition of a surcharge to restore funds to the depleted estates as a remedy for the financial irregularities.

On July 7 and 10, 1995, hearings were held on the department's objections to the accounts. On July 11, 1995, the trial court issued, in open court, an oral adjudication overruling the department's objections, directing that distribution of the estates be made, and denying the department's surcharge petition. On July 17, 1995, the trial court filed orders formally dismissing the department's objections, confirming the accounts, and denying the department's requests for a surcharge.[3]

 On July 27, 1995, the department, on behalf of the Department of Aging, filed exceptions to the trial court's orders dismissing its objections and confirming the accounts. None of the successor guardians joined in the exceptions. The exceptions alleged, inter alia, that:

4. The trial court failed to consider or give proper weight to the fact that the guardian admitted that they had invaded the wards' principal without a court order.

fiduciary and shall not be required to post bond.
20 Pa.C.S. § 5553(a).

2. Section 5531 of the Code provides:
§ 5531. When accounting filed.
A guardian shall file an account of his administration whenever directed to do so by the court or may file an account at the termination of the guardianship, or at any other time or times authorized by the court.
20 Pa.C.S. § 5531.

3. Section 5533 of the Code provides, in pertinent part:
§ 5533. Notice, audits, reviews and distribution
The provisions concerning accounts, audits, reviews, distribution and rights of distributees in an incapacitated person's estate shall be the same as those set forth in the following provisions of this title for the administration of a decedent's or minor's estate:
 * * * * * *
Section 3514 (relating to confirmation of account and approval of proposed distribution).
20 Pa.C.S. § 5533.

In turn, section 3514 of the Code provides:
§ 3514. Confirmation of account and approval of proposed distribution
No account shall be confirmed, or statement of proposed distribution approved, until an adjudication or a decree of distribution is filed in conformity with local rules by the court or by the clerk of the court, expressly confirming the account or approving the statement of proposed distribution and specifying or indicating by reference to the statement of proposed distribution the names of the persons to whom the balance available for distribution is awarded and the amount or share awarded to each.
20 Pa.C.S. § 3514.

5. The trial court absolutely confirmed the accounts filed by the guardian, which fail to follow statutory requirements and Court Rules as set forth in the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. 101 et. seq.

*See* Docket Entry 45, p. 3.[4]

On September 28, 1995, argument on the department's exceptions were conducted before the trial court. At the hearing, the trial court also ordered GSAC and ECRC to submit information relating to the counsel fees they had incurred in the litigation involving these estates. On October 25, 1995, the trial court heard argument on the assessment of counsel fees against the department.

On November 15, 1995, the trial court entered orders in each of these cases dismissing the department's exceptions and awarding counsel fees. The opinion of the trial court filed in support of the orders states, in pertinent part:

> This Court dismissed objections filed by [the department], and confirmed accounts in these five estates of incapacitated persons, and filed a decree of distribution on July 19, 1995. . . . [T]he Allegheny County Department of Aging, has now filed exceptions to the Orders dismissing the objections of the County and confirming the accounts. Those exceptions are now before the Court for disposition, along with a motion filed on behalf of [GSAC], [ECRC] and Richard S. Levine, for attorney's fees against the [department], which is acting on behalf of the Department of Aging, and against the Department of Aging itself.
>
> The Court conducted a two-day hearing with respect to the objections initially filed to the accounts, and dismissed those objec-

tions on the basis that the County had failed to present any evidence of any kind which would lead to the conclusion that anything was amiss in the handling of the estates of the particular wards by the corporate fiduciaries or Levine. The Court adjudicated that matter orally, and the transcript of the hearing indicates plainly the basis for the Court's ruling. The County's exceptions add absolutely nothing to what has gone before.

It is difficult to determine precisely what it is the County is complaining of in its exceptions. Although the exceptions as filed are nine in number, the brief in support of the exceptions lists five issues. Since they are combinations in some instances of the filed exceptions, the Court will treat the exceptions as originally filed.

\*　　\*　　\*　　\*　　\*　　\*

[The department] further complain[s] that the auditing Judge failed to consider or give proper weight to the guardian's alleged admission that it had invaded the wards' accounts without a court order. The Court did in fact consider that argument, and concluded that there was no invasion of principal in any of the cases, except for expenses which were permitted to be handled without prior approval. In any event, any payments or any invasion of principal which might have occurred without court approval were ratified subsequent to the making of the expenditures, and the entire question is mooted by virtue of the auditing Court's finding that there had been no harm suffered by any of the wards of [GSAC and ECRC].

[The department] further complain[s] that the Court confirmed the accounts ab-

---

**4.** We note that in the instant appeal GSAC and ECRC argue that the department, on behalf of the Allegheny Department of Aging, lacked standing to file exceptions to the trial court's orders denying its objections to the final accounts. However, as GSAC and ECRC concede, the standing of the department and the Allegheny County Department of Aging to file the objections was not challenged; their standing in this matter was first contested when the department filed exceptions to the orders denying its objections to the final accounts.

Whether a party has standing to maintain an action is not a jurisdictional question and, there-

fore, it may not be raised by a court *sua sponte*. *City of Philadelphia v. Philadelphia Board of License and Inspection Review,* 669 A.2d 460 (Pa. Cmwlth.1995); *Statewide Building Maintenance, Inc. v. Pennsylvania Convention Center Authority,* 160 Pa.Cmwlth. 544, 635 A.2d 691 (1993). In addition, a party may waive its opportunity to contest the standing of another party by not raising the issue in a timely manner. *Id.* Because the participation of the department and the Allegheny County Department of Aging in this matter was not challenged when the objections were filed, GSAC and ECRC must be deemed to have waived any claim in this regard.

solutely, in derogation of the rules of court and statutory requirements. This exception, aside from its lack of merit, has been waived. The exception deals with the fact that counsel for the wards themselves was not present or did not participate in the hearing on the objections. That exception is raised for the first time as a post-hearing exception. The [department] did not request the presence of such counsel before or during the hearing, and the matter has been waived.

\* \* \* \* \* \*

The only question remaining to be determined is whether [GSAC's and ECRC's] motion for attorneys' fees should be granted. The Court concludes that it should. A great deal of time has gone into briefing and arguing whether the County had standing to file the exceptions. It is argued, and, quite persuasively by [GSAC and ECRC], that no successor guardian for any of the incapacitated persons has joined in the exceptions, and that the exceptions are filed solely by ... the Allegheny County Department of Aging. [GSAC and ECRC] argue that, since each of the wards has a successor guardian, that only the successor guardians have standing to file exceptions. The County contends that, in its capacity as a watchdog for the aging and keeper of the public fisc, it has standing to file exceptions. The Court need not and does not decide the standing question. It is clear to the Court that, whether the County does or does not have standing to file the exceptions, the exceptions, just as were the original objections, are not only dilatory, obdurate and vexatious, but frivolous as well. In light of the County's total failure to present anything which casts even a shadow of doubt upon the propriety of the accounts, or to refute in any way testimony presented by [GSAC and ECRC], its persistence in this crusade cannot be characterized in any other fashion.

The County does not raise any question about the amounts of counsel fees requested in this case. Rather, the County admitted their reasonableness, but disputes their awardability. The County says first that it is immune, by the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, et seq. What the County misapprehends is the fact that no one is seeking damages against the County in a tort action. What is being sought is the assessment of counsel fees as part of the costs of litigation, by virtue of the provisions of 42 Pa.C.S. § 2503(7) and (9).

[GSAC and ECRC] do not seek counsel fees for anything preceding the filing of the exceptions. They concede that, although the County was unable to have its objections sustained, that there was at least arguably a basis for the filing of objections. In light of what occurred at the hearing, however, it should have been clear to the County that pursuit of the matter was completely fruitless, and that further litigation was not only not merited, but would constitute dilatory, obdurate and vexatious activity in continuing the matter. This Court is in agreement with that view, and will award counsel fees and costs against the Department of Aging and the Law Department, as requested by [GSAC and ECRC]. See *Estate of Liscio,* [432 Pa.Super. 440] 638 A.2d 1019 (Pa.Super.1994), and *City of Scranton v. Local Union No. 669,* 122 Pa.Cmwlth. [140], 551 A.2d 643 (1988).

Trial Court Opinion, pp. 1, 2–5.

On December 5, 1995, the department appealed the trial court's orders to the Superior Court. On October 24, 1996, the Superior Court issued an order and opinion transferring the appeals to this court.

On appeal, the department claims: (1) the trial court erred in dismissing its exceptions and confirming the final accounts submitted by GSAC and ECRC because they failed to comply with the provisions of sections 5521(c)(1)(i),[5] 5536(a) [6] and 5553(b)(1) [7] of the

---

**5.** Section 5521(c)(1)(i) of the Code provides:

 **(c) Reports.-**

 (1) Each guardian of an incapacitated person shall file with the court appointing him a report, at least once within the first 12 months

of his appointment and at least annually thereafter, attesting to the following:

 (i) Guardian of the estate:

 (A) current principal and how it is invested;

 (B) current income;

Code while they were guardians of the instant estates; (2) the trial court erred in imposing the award of counsel fees under section 2503(7) of the Judicial Code,[8] and it is immune from the imposition of counsel fees under section 305 of the Older Adults Protective Services Act.[9]

We initially note that:

"[I]n reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence."

*In re Estate of McCrea*, 475 Pa. 383, 386, 380 A.2d 773, 775 (1977) (citations omitted).

■ Thus, our scope of review in an appeal from a final decree of the Orphans' Court is quite narrow. *In re Cummings Estate*, 330 Pa.Superior Ct. 255, 479 A.2d 537 (1984). The resolution of conflicts in the evidence presented is for the trial court as the trier of fact and the findings of the court, supported by competent evidence of record, are entitled to the weight of a jury's verdict. *Id.* The trial court's decree may not be disturbed unless the court applied an incorrect legal standard. *Id.*

The department first claims that the trial court erred in dismissing its exceptions and confirming the final accounts submitted by GSAC and ECRC because they failed to comply with sections 5521(c)(1)(i), 5536(a) and 5553(b)(1) of the Code while they were guardians of the instant estates.

(C) expenditures of principal and income since the last report; and

(D) needs of the incapacitated person for which the guardian has provided since the last report.

20 Pa.C.S. § 5521(c)(1)(i).

6. Section 5536(a) of the Code provides:
 **§ 5536. Distributions of income and principal during incapacity**
 **(a) In general.**—All income received by a guardian of the estate of an incapacitated person, including (subject to the requirements of Federal law relating thereto) all funds received from the Veterans' Administration, Social Security Administration and other periodic retirement or disability payments under private or governmental plans, in the exercise of a reasonable discretion, may be expended in the care and maintenance of the incapacitated person, without the necessity of court approval. The court, for cause shown and with only such notice as it considers appropriate in the circumstances, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incapacitated person for the care, maintenance or education of the incapacitated person, his spouse, children or those for whom he was making such provision before his incapacity, or for the reasonable funeral expenses of the incapacitated person's spouse, child or indigent parent. In proper cases, the court may order payment of amounts directly to the incapacitated person for his maintenance or for incidental expenses and may ratify payments made for these purposes.
 20 Pa.C.S. § 5536(a).

7. Section 5553(b)(1) of the Code provides:
 **(b) Powers and duties.**—The guardianship support agency shall be treated the same as all other guardians in regard to appointment as guardian or successor or co-guardian, reporting, powers and duties, compensation and in all other respects. In addition to section 5521 (relating to provisions concerning powers, duties, and liabilities), a guardianship support agency shall have the power and duty to:
 (1) Invest the principal and income of incapacitated persons for whom it is the guardian of the estate. For this purpose, it may pool the principal and income, but shall maintain an individual account for each incapacitated person reflecting the person's participation therein.
 20 Pa.C.S. § 5553(b)(1).

8. 42 Pa.C.S. § 2503(7). Section 2503 states:
 **§ 2503. Right of participants to receive counsel fees**
 The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

 * * * * * *

 (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

9. Act of November 6, 1987, P.L. 381, *as amended and renumbered,* Act of December 18, 1996, P.L. 1125, 35 P.S. § 10225.305. Section 305 provides:

 In the absence of willful misconduct or gross negligence, the agency, the director, employees of the agency, protective services workers or employees of the department shall not be civilly or criminally liable for any decision or action or resulting consequence of decisions or action when acting under and according to the provisions of this chapter.

As noted above, section 5521(c)(1)(i) of the Code requires the guardian of an incapacitated person to file an annual report with the court regarding: the current principal in the estate and how it is invested; the current income; the expenditures of principal and income since the last report; and the needs of the incapacitated person for which the guardian has provided since the last report. 20 Pa.C.S. § 5521(c)(1)(i). In addition, section 5553(b)(1) of the Code empowers a guardianship support agency to invest the principal and income of its incapacitated wards, and allows the pooling of their principal and income, but requires the maintenance of individual accounts for each of the wards reflecting their participation therein. 20 Pa. C.S. § 5553(b)(1).

█ The department submits that the trial court erred in dismissing its exceptions and confirming the final accounts because there was no evidence presented which demonstrated that GSAC or ECRC complied with these requirements. However, because the certified record in this case shows that these claims were neither properly presented in its exceptions to the trial court's orders, nor considered by the court below, they will not be addressed in the instant appeal. Pa. R.A.P. 302(a); *In re Abrams Estate,* 419 Pa. 92, 213 A.2d 638 (1965); *In re Estate of Schmidt,* 408 Pa.Superior Ct. 353, 596 A.2d 1124 (1991), *aff'd,* 533 Pa. 86, 619 A.2d 1058 (1993); *In re Trust of Bachman,* 338 Pa.Superior Ct. 546, 488 A.2d 27 (1985).

In addition, as noted above, section 5536(a) of the Code provides that all income received by a guardian for an estate may be expended, in the exercise of a reasonable discretion, for the care and maintenance of the incapacitated individual without prior court approval. 20 Pa.C.S. § 5536(a). However, section 5536(a) also provides that the court, for cause shown and with proper notice, may authorize the payment or application of funds from the principal of the estate. *Id.*

The department contends that the trial court erred in confirming the accounts as GSAC's own witness testified that the principal of the wards' estates was invaded for their maintenance without prior court approval, in violation of the foregoing provi-

sions. However, as the trial court stated in dismissing this exception:

> The Court ... concluded that there was no invasion of principal in any of the cases, except for expenses which were permitted to be handled without prior approval. In any event, any payments or any invasion of principal which might have occurred without court approval were ratified subsequent to the making of the expenditures, and the entire question is mooted by virtue of the auditing Court's finding that there had been no harm suffered by any of the wards of [GSAC].

Trial Court Opinion, pp. 2–3.

█ Long ago, in a case involving the unauthorized invasion of the principal of an incapacitated individual's estate for his support and maintenance, the Pennsylvania Supreme Court noted:

> It is not denied that the court below could have authorized the expenditures complained of if the accountant had made application at the proper time. What it had the power to authorize, if done without permission it may ratify and approve. Whether this power should be exercised in any given case is not a question to be settled by the application of some general rule of law, but by the exercise of a sound judicial discretion in view of all the surrounding circumstances. Fortunately the courts have the power to do in such cases what ought in fairness and good conscience to be done. The court below seems to have exercised this power in the case now before us in a discreet and equitable manner, and we are not willing to disturb the conclusion reached.

*Estate of Hain,* 167 Pa. 55, 61, 31 A. 337, (1895). *See also Kilpatrick's Appeal,* 113 Pa. 46, 5 A. 8 (1886); *Frankenfield's Appeal,* 102 Pa. 589 (1883). Thus, even if it is assumed that GSAC or ECRC invaded the principal of the wards' estates without prior court approval as required by section 5536(b) of the Code, it is clear that the trial court had the authority to subsequently ratify and approve the expenditures. As a result, the trial court did not err in confirming the account in spite

of the guardians' purported violation of section 5536 of the Code.

The department next claims that the trial court erred in imposing the award of counsel fees under section 2503(7) of the Judicial Code, and that it is immune from the imposition of counsel fees under section 305 of the Older Adults Protective Services Act.

■■■ As noted above, section 2503(7) of the Judicial Code provides that counsel fees may be imposed against a party as a sanction for "dilatory, obdurate or vexatious conduct during the pendency of a matter". 42 Pa. C.S. § 2503(7); *Township of South Strabane v. Piecknick,* 546 Pa. 551, 686 A.2d 1297 (1996). In addition, any award of counsel fees under section 2503(7) must be supported by a specific finding of dilatory, obdurate or vexatious conduct by the trial court. *Id.* If the record supports the trial court's finding of fact that a party's conduct was dilatory, obdurate or vexatious, the award of counsel fees will not be disturbed in the absence of an abuse of discretion. *Id.*

■■■ Herein, in the opinion filed in support of its order awarding counsel fees, the trial court indicated that GSAC and ECRC did not seek counsel fees for any action by the department which preceded the filing of exceptions. Trial Court Opinion, p. 4. The trial court determined that, after the hearing on the department's objections, it should have been clear to the department that further pursuit of the matter through the filing of exceptions "was completely fruitless, and that further litigation was not only not merited, but would constitute dilatory, obdurate and vexatious activity...." *Id.,* pp. 4–5. The court found that "[i]n light of the [department]'s total failure to present anything which casts even a shadow of doubt upon the propriety of the accounts, or to refute in any way the testimony presented by the [GSAC and ECRC], its persistence in this crusade cannot be characterized in any other fashion." *Id.,* p. 4. Thus, the trial court specifically found that the department's continued pursuit of the matter, in light of the evidence adduced at the hearing on its objections, constituted dilatory, obdurate and vexatious conduct.

In support of its claim that the trial court erred in this regard, the department argues that it had a statutory right to file the objections to the accounts and exceptions to the trial court's orders confirming the accounts. In addition, the department submits that it had a basis upon which to file the objections and the exceptions; namely, GSAC's and ECRC's purported violations of sections 5521(c)(1)(i), 5536(a) and 5553(b)(1) of the Code while they were guardians of the instant estates.

However, the foregoing arguments raised by the department miss the mark. Whether or not the department had a statutory right to file objections to the final accounts is immaterial; the award of counsel fees was not imposed for its filing of objections. Rather, the award of counsel fees was imposed for the department's filing of exceptions to the trial court's orders confirming the accounts when, "in the Court's view, the County presented no evidence of any kind [at the hearings on its objections] to indicate any improprieties, and [GSAC and ECRC] presented considerable evidence indicating the correctness of their handling of the affairs of the wards...." Trial Court Opinion, p. 2.

Further, the department's claim that the orders must be reversed because of the purported violations of sections 5521(c)(1)(i), 5536(a) and 5553(b)(1) of the Code is untenable. As noted above, the certified record in this case demonstrates that the claims regarding sections 5521(c)(1)(i) and 5553(b)(1) were neither properly presented in the department's exceptions, nor considered by the court below. As also noted above, the department's claim regarding section 5536(a) is entirely devoid of merit.

Moreover, the department filed the instant exceptions following the trial court's oral adjudication of July 11, 1995 overruling its objections and denying its surcharge petition. In the oral adjudication, the trial court stated the following, in pertinent part:

I have concluded, as has been aptly stated by [counsel for GSAC and ECRC], there is absolutely no evidence in this case from which the Court can find that there was any impropriety on the part of the corpo-

rate bodies who served as guardians in this matter, [GSAC] and/or [ECRC].

[Counsel for the department], in her closing argument, said that duty is at the heart of the case and there was no evidence of services rendered to the wards, and I think that the evidence is 180 degrees away from that statement. Not only is there evidence that services were rendered to the wards, but there is overwhelming evidence. And ... whether it is on a standard of a preponderance of the evidence or clear and convincing evidence or evidence beyond a reasonable doubt or evidence beyond any doubt in the world, the evidence discloses that services were indeed rendered to these wards and in fact as much as way above and beyond what might be expected in these circumstances where largely the guardians are dealing with indigence or people where there was no reasonable likelihood of payment and where they displayed unusual, it seems to me, regard for the welfare and benefit of their wards.

There simply is no evidence to indicate that anybody's resources were in any way compromised by the activities of [GSAC] or [ECRC]. . . .

\* \* \* \* \* \*

Here we have an operation which is performing basically a public service, taking on very difficult cases, and as I indicated in some of the instances without any reasonable expectation of payment. I don't know frankly how they managed to get along as long as they did providing services undoubtedly at great personal sacrifice in many, many instances. And I'm talking about the employees. I have no reason to doubt the testimony which they gave.

\* \* \* \* \* \*

As to ratification, I think in some instances it might have been nice for ratification specifically, but the Court has ratified in fact up to December of '93 and clearly has established a course of conduct which

approves of the way this business was being operated. I am very strongly of the view ... for purposes of this adjudication that the Court found the testimony of [the department's witness,] the certified public accountant to be of zero value in this case, have no weight whatsoever, her alleged audit of these accounts proved to be absolutely worthless. Everything which she questioned was fully explained by completely credible testimony and there is nothing which she had to say which shows in any way any default on the part of the guardians.

The arguments which were made by [counsel for GSAC and ECRC] with respect to the conduct of the [d]epartment, I must confess are highly persuasive; but the Court is not prepared to impose sanctions on the [d]epartment or any of the lawyers involved in this case, although the Court is very strongly persuaded that there is good evidence of obdurate and vexatious conduct by the [d]epartment and in the event that this matter is pursued, the Court would urge the Appellate Court to consider strongly the imposition of sanctions, or if necessary to remand to this Court for the imposition of sanctions because although I am very strongly persuaded in that direction, I am not prepared without further investigation and ado to impose such sanctions.

The long and short of it is that there is no evidence, not a scintilla of evidence in this case which could persuade any reasonable factfinder that [GSAC] and [ECRC] did anything which was harmful to any of these wards, and in fact the evidence is completely to the contrary, that they provided services well above and beyond that which might be expected in similar circumstances.

Tr. 7/11/95,[10] pp. 269–70, 272–74.

In spite of the foregoing adjudication and admonition by the trial court, the department continued in its attempt to recover sanctions from GSAC and ECRC by filing exceptions to the trial court's orders dismissing its ob-

10. "Tr. 7/11/95" refers to the transcript of the oral adjudication issued by the trial court on July 11, 1995.

jections to the final accounts. Because the trial court determined that the department persisted in pursuing these claims, in the absence of any reasonable basis in law or in fact, it did not abuse its discretion in imposing counsel fees pursuant to section 2503(7) of the Judicial Code.

Finally, the department contends that it is immune from the imposition of counsel fees in this case under the provisions of section 305 of the Older Adults Protective Services Act. However, because the certified record in this case demonstrates that this claim was neither properly presented to, nor considered by the court below, it will not be addressed for the first time on appeal. Pa. R.A.P. 302(a); *Department of Transportation, Bureau of Driver Licensing v. Boros,* 533 Pa. 214, 620 A.2d 1139 (1993); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *In re Abrams Estate.*

Accordingly, the orders of the trial court are affirmed.

### ORDER

NOW, this 30th day of June, 1997, the orders of the Orphans' Court Division of the Court of Common Pleas of Allegheny County, dated November 15, 1995, at Nos. 862 of 1992, 2548 of 1991, 5306 of 1988, 8650 of 1990 and 2029 of 1991, are affirmed.