In re the BARNES FOUNDATION, A Corporation.

Appeal of Richard Ralph Feudale (at 810).

In re the Barnes Foundation, A Corporation.

Appeal of Commonwealth of Pennsylvania (at 1038).

Superior Court of Pennsylvania.

Argued Oct. 16, 2012.

Filed June 19, 2013.

Richard R. Feudale, appellant, pro se (at 180).

Claudia M. Tesoro, PA Office of Attorney General, for Commonwealth, appellant (at 1038).

James D. Schneller, amicus curiae.

Bruce P. Merenstein, Philadelphia, for appellee.

BEFORE: PANELLA, FITZGERALD,* and PLATT,** JJ.

OPINION BY PANELLA, J.:

Appellant, Richard Ralph Feudale, Esquire, appeals from the judgment entered March 7, 2012, by the Honorable Stanley R. Ott, which sustained the preliminary objections based on lack of standing to Feudale's petition to reopen proceedings which permitted, *inter alia,* the relocation of The Barnes Foundation, and awarded The Barnes Foundation ("The Barnes") attorney fees and costs. Additionally, the Commonwealth of Pennsylvania has filed a cross-appeal from the March 7, 2012, order, which made final the trial court's decision not to award attorney fees to the Commonwealth. After review, we affirm the judgment of the trial court insofar as it

---

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

sustained the preliminary objections to Feudale's petition and determined that he lacked standing to intervene in The Barnes' proceedings, but reverse the trial court's imposition of sanctions. Additionally, we affirm the trial court's decision not to award the Commonwealth counsel fees.

The genesis of this case harkens back nearly a decade ago, when The Barnes, a Pennsylvania non-profit corporation charged with implementation of a charitable trust focused on the advancement of art education and appreciation, petitioned the Montgomery County Orphans' Court to make changes to the administrative provisions of its governing documents pursuant to the doctrine of deviation. Of specific relevance to this case, The Barnes sought permission to relocate its gallery from Lower Merion Township in Montgomery County to Philadelphia. The Attorney General's Office participated in the proceedings as *parens patriae*. Although several parties sought to intervene in these proceedings, Appellant Feudale did not. Following a two-phase trial over the course of ten days, the Honorable Stanley R. Ott entered a final decree on December 13, 2004, approving The Barnes' 2002 Petition and permitting the proposed relocation. The sole appeal from the court's final decree was quashed by the Pennsylvania Supreme Court on April 27, 2005. *In re Barnes Foundation*, 582 Pa. 370, 871 A.2d 792 (2005).

Thereafter, in 2007, a group of organizations and individuals filed a petition seeking to reopen the proceedings leading up to the 2004 final decree. While that petition was pending, the County of Montgomery also filed a petition seeking to reopen the proceedings. Feudale neither joined these petitions nor sought to intervene independently at that time. Judge Ott ultimately dismissed these petitions upon the determination that the petitioners lacked standing to reopen the 2002 proceedings.

In 2011, yet another group of individuals and organizations sought to reopen the 2004 final decree (the "Friends" petitioners). Shortly thereafter, Feudale filed his own petition seeking to reopen the 2002 proceedings. Both The Barnes and the Commonwealth filed preliminary objections to the petitions based on lack of standing. Following a hearing, Judge Ott concluded that the 2011 petitioners were "not aggrieved because they can not show a substantial, direct and immediate interest in the outcome of the litigation;" "do not possess a substantial interest in the matter because they are suffering no discernible adverse effect to an interest other than that of the general citizenry;" and "are a private party and [ ] generally lack standing to enforce a charitable trust since the public is the object of the settlor's benefice in a charitable trust." Trial Court Opinion, 10/6/11, at 5–6. The court granted the preliminary objections and dismissed both petitions. Additionally, the court determined that both petitions were sanctionable pursuant to 42 Pa. Cons. Stat. Ann. § 2503 as conduct that is "dilatory, obdurate or vexatious." Following a hearing, the court awarded The Barnes $15,000 in attorney fees from Feudale and $25,000 from the Friends petitioners and their counsel. Order, 3/7/12. The court did not award the Commonwealth fees or costs. Thereafter, Feudale filed his appeal on March 13, 2012, and the Commonwealth's cross-appeal followed on April 4, 2012.[1]

We proceed to first address the issues Feudale raises for our review:

 I. In a case involving the alteration and relocation of an education founda-

---

1. The Friends petitioners initially filed an appeal from the court's judgment on April 5, 2012; however, the appeal was subsequently discontinued on July 11, 2012.

tion, The Barnes Foundation, does the Orphans' Court's denial of standing to petitioner/appellant constitute an error of law and/or an abuse of discretion when said petition/appellant bases his cause of action upon Article I, Section 27 of the Pennsylvania Constitution, The History Code, as codified at 37 Pa.C.S.A. Section 101, *et seq.*, and 37 Pa.C.S.A. Section 512 and supports those claims by an education study of the imagery found at The Barnes Foundation and the Merion site that describes The Barnes as a symbolically site specific esthetic whole as much a symbol of Pennsylvania as its other historic landmarks and integral to the fabric of the Pennsylvania esthetic and experience—a study and assertion which has not been refuted by any educator associated with The Barnes—and does the court's imposition of economic sanctions against petitioner as a result of petitioner's assertion of constitutional and statutory standing based upon said study, which standing is specifically provided for in 37 Pa.C.S.A. Section 512, constitute an error of law and/or an abuse of discretion?

II. In light of Article 1, Section 10 of the U.S. Constitution and the bright line standard established in the landmark U.S. Supreme Court decision in [*Dartmouth College v. Woodward,* 4 Wheat. 518], 17 U.S. 518 [4 L.Ed. 629] (1819) and its progeny which interprets Article 1, Section 10 of the U.S. Constitution as prohibiting state actors from encouraging or inducing the modification of a private contract and, by logical corollary, the provision of public monies to induce or encourage the same, does the Orphans' Court's denial of standing to petitioner/appellant to complain of the conduct of state actors and the application of public monies appropriated by the legislature in the case of The Barnes Foundation move which violates said constitutional principles enunciated in Article 1, Section 10 and the [*Dartmouth College*] case and its progeny constitute an error of law and/or an abuse of discretion and is the court's award of economic sanctions against petitioner as a result of petitioner's assertion of these constitutional principles an error of law and/or an abuse of discretion?

III. Is the Orphans' Court's determination that petitioner/appellant's conduct is sanctionable because it is somehow outrageous (i.e. in bad faith) or is the epitome of arbitrary and vexatious conduct unsupported by the competent evidence and does such a determination constitute an error of law and/or an abuse of discretion.

Appellant's Brief, at 7.

Our standard when reviewing a trial court's decision to sustain preliminary objections is as follows:

The scope of review in determining whether a trial court erred in sustaining preliminary objections and dismissing a complaint is plenary.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free

and clear of doubt, and this Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion.

*Sulkava v. Glaston Finland Oy,* 54 A.3d 884, 889 (Pa.Super.2012) (citation omitted).

The paramount consideration in Feudale's appeal centers on whether he has standing to reopen the 2002 proceedings involving the relocation of the gallery. Our Pennsylvania Supreme Court has recently summarized the relevant law regarding the concept of standing as follows:

> This Court has held that 'where a person is not adversely affected in any way by the matter challenged, he is not aggrieved and thus has no standing to obtain a judicial resolution of that challenge.' *Hosp. & Healthsystem Ass'n of Pennsylvania v. Department of Public Welfare,* 585 Pa. 106, 888 A.2d 601, 607 (2005) (citing *William Penn Parking Garage, Inc., v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269, 280 (1975)). Moreover, in order to be aggrieved, a party must show that it has a substantial, direct and immediate interest in the claim sought to be litigated. *Id.; William Penn,* 346 A.2d at 280–83. We have defined these requirements as follows: a 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law; a 'direct' interest requires a showing that the matter complained of caused harm to the party's interest; an 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*Pennsylvania Medical Soc. v. Department of Public Welfare of Com. of Pa.,* 614 Pa. 574, 39 A.3d 267, 278 (2012).

 With regard to standing in cases specifically involving the enforcement of charitable trusts, our Supreme Court has clearly held that "[p]rivate parties generally lack standing to enforce charitable trusts." *In re Milton Hershey School,* 590 Pa. 35, 42, 911 A.2d 1258, 1262 (2006) (finding school alumni association lacked standing to rescind agreement between school and Office of Attorney General concerning administration of trust and school policies).

> Since the public is the object of the settlor's beneficiaries in a charitable trust, private parties generally have insufficient interest in such trusts to enforce them. Those who may bring an action for the enforcement of a charitable trust include the Attorney General, a member of the charitable organization, or someone having a special interest in the trust. A person whose only interest is that interest held in common with other members of the public cannot compel the performance of a duty the organization owes to the public.

*Id.,* 590 Pa. at 42–43, 911 A.2d at 1262 (internal citations omitted).

Feudale purports to invoke the Historic Preservation Act, 37 Pa.Cons.Stat.Ann. § 501 *et seq.,* as a basis for standing. Specifically, Feudale argues private actions are permitted under Section 512 of the Act, **Enforcement of historic preservation laws and policies,** which states that "[t]he Attorney General, the commission, any political subdivision, **person** or other legal entity may maintain an action in an administrative tribunal or court for the protection or preservation of any historic resource in this Commonwealth." (emphasis added).

The sole case upon which Feudale relies to interpret or apply section 512 of the Historic Preservation Act is the Pennsylvania Commonwealth Court's decision in *Friends of Atglen–Susquehanna Trail, Inc. v. Pennsylvania Public Utility Com'n*, 717 A.2d 581 (Pa.Cmwlth.1998), *appeal denied*, 559 Pa. 695, 739 A.2d 1059 (1999).[2] In that decision, Friends of the Atglen–Susquehanna Trail, Inc. ("FAST"), a rails-to-trail organization, petitioned for review of an order of the Pennsylvania Public Utility Commission that largely adopted the decision of an Administrative Law Judge and approved two settlement agreements that the Consolidated Rail Corporation entered into with several townships in Lancaster County and with the Pennsylvania Department of Transportation. The settlements related, *inter alia*, to the abolition of multiple rail-highway crossings. The Commonwealth Court rejected the Commission's argument that FAST lacked standing to intervene in the matter, holding:

> [f]irst, there is no question that FAST possesses such standing as is conferred by Section 512 of the Historic Preservation Act because it is seeking to enforce both that Act and federal laws and policies relating to historic preservation. Second, as a trails group that has concededly exerted substantial efforts to acquire and convert the rail line at issue, FAST has an interest under the Rails to Trails Act that is direct, and it is well situated to advance the concerns of that Act.

*Friends of Atglen–Susquehanna Trail, Inc.*, 717 A.2d at 585.

Although we agree that the Commonwealth Court relied in part upon Section 512 of the Historic Preservation Act in its decision, Feudale's reliance on the case ignores the fact that the Court also found it significant that the intervener FAST had exerted substantial time and funding in the matter at issue and sought to enforce federal laws and policies. Here, Feudale cannot claim a vested financial interest in the Barnes proceedings, nor does he cite any federal laws and policies relating to historic preservation he hopes to enforce. Instead, he argues that, as a student of The Barnes and author of *Barnes Rune 2012*,[3] he had obtained "special knowledge" of The Barnes which gives him the right to intervene in this case. Notably, however, Feudale cites no prevailing legal proposition that supports his claim that "special knowledge counts under Pennsylvania law" as a justification for standing.

Feudale's argument merely conflates "special knowledge" with the "special interest" necessary in *In re Milton Hershey School* in order for private citizens to bring or join an enforcement action against a charitable trust. Feudale cannot invoke the Historic Preservation Act to confer standing in a vacuum, in the absence of the other factors required to grant standing to private actors. Simply put, Feudale does not legitimately claim a "special interest" in The Barnes which would confer standing to intervene in the matters regarding the regulation and enforcement of the charitable trust; he has no interest different from that held by other members of the general public. Accordingly, we cannot find that the trial court abused its discretion when it sustained the prelimi-

---

2. "Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive." *In re Brown*, 30 A.3d 1200, 1204 n. 2 (Pa.Super.2011).

3. Feudale contends that in *Barnes Rune 2012* he examines "the symbolism and spirituality of the Barnes." We cannot confirm this because Feudale has not included a copy of his opus in the certified record.

nary objections to Feudale's petition based upon his lack of standing to intervene.

We find Feudale's second argument raised on appeal to be similarly unavailing. Feudale claims "Senate Bill 1213 of 2002, encourages breach of the Barnes Indenture of Trust." Appellant's Brief, at 27. From what we can garner from the argument Feudale devotes to this issue, Feudale believes this "clandestine $100 Million dollar legislative appropriation" was never publicly debated or opened to public debate in violation of Article I, Section 10 of the United States Constitution. *Id.* at 29–30. We need not reach the merits of this scattered, perplexing argument,[4] as Feudale simply does not attempt to provide any basis to establish his standing to intervene in the matter. Therefore, this issue provides Feudale with no relief.

■■■ Lastly, Feudale argues that the trial court abused its discretion when it imposed a sanction of $15,000 in counsel fees and costs. Our standard of review is as follows:

> Our review of a trial court's award of attorneys' fees is limited. We may only consider whether the court 'palpably abused its discretion in making a fee award.' *Thunberg v. Strause,* 545 Pa. 607, 682 A.2d 295, 299 (1996). We may not disturb the award if the record supports the trial court's finding that Miller violated the relevant conduct provision of the Judicial Code. *In re Estate of Schram,* 696 A.2d 1206, 1213 (Pa. Cmwlth.1997), *appeal denied,* 550 Pa. 712, 705 A.2d 1313 (1997). The Judicial

Code permits an award of reasonable counsel fees 'as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.' 42 Pa.C.S. § 2503(7). Moreover, the court may award counsel fees 'because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.' 42 Pa.C.S. § 2503(9). Such awards represent an attempt to curtail the filing of lawsuits which are frivolous or otherwise improper. *Thunberg,* at 300.

*Miller v. Nelson,* 768 A.2d 858, 861 (Pa.Super.2001), *appeal denied,* 566 Pa. 665, 782 A.2d 547 (2001).

Herein, at the time Feudale filed his petition, the changes to the Barnes' governing documents approved by the trial court had been largely implemented and the new gallery was nearing completion. As previously noted, petitioners in 2004 and 2007 attempted to intervene and challenge the proceedings, based on arguments similar to those raised here by Feudale. The trial court repeatedly determined that the petitioners lacked standing to intervene. Under these circumstances, the trial court categorized, "[w]ithout hesitation," "petitioner Feudale's filing to be the epitome of vexatious, arbitrary and bad faith conduct. His brief and argument were devoid of any legal substance, relying instead on historical anecdotes, snippets of art theory, and his own brand of philosophical musings, among other oddities." Trial Court Opinion, 10/6/11 at 8 (footnote omitted).

---

**4.** The trial court noted when it rejected this same argument that:

> [t]he perception that this appropriation is a smoking gun in this matter has always left the [c]ourt somewhat mystified. The appropriation was earmarked to fund a new building for The Foundation *in Philadelphia.* Surely, even the most vehement crit-

ics of our decision in 2004 do not believe that, had the existence of the budget item been known at the hearings, the [c]ourt could have directed the legislature to redirect the funds to the existing gallery in Merion or sent The Foundation off with instructions to accomplish this on its own. Trial Court Opinion, 10/6/11, at 4 n. 6.

■ "The relentless pursuit of a claim which plainly lacks legal merit warrants an award of counsel fees." *Miller*, 768 A.2d at 862 (citation omitted). "A suit is vexatious if brought without legal or factual grounds and if the action served the sole purpose of causing annoyance." *Id.* "An opponent's conduct has been deemed to be 'arbitrary' within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature." *Berg v. Georgetown Builders*, 822 A.2d 810, 816 (Pa.Super.2003) (citation omitted).

■ After review, we do not find Feudale's petition to be so arbitrary and vexatious as to warrant the award of counsel fees. While Feudale certainly raises some arguments previously determined by the court to be without merit, and his arguments at times verge on scattered and disjunctive, we do not find his petition to be wholly without legal or factual grounds. Specifically, Feudale's argument that he is granted standing to intervene in the Barnes proceedings under the Historic Preservation Act, while ultimately unavailing, at least merited examination. This issue, not raised by past interveners in this case, cannot be deemed random or frivolous. Accordingly, we are constrained to reverse the trial court's imposition of sanctions against Feudale in this matter.

Lastly, we must address the Commonwealth's cross-appeal, in which they challenge the trial court's decision not to award counsel fees in their favor. Based on our discussion, *supra*, in which we determined that Feudale's filing was not so arbitrary and vexatious as to warrant the award of counsel fees under 42 PA. CONS.

STAT.ANN. § 2503, we will not disturb the trial court's decision.[5]

Judgment affirmed in part and reversed in part. Jurisdiction relinquished.

---

**5.** In its October 6, 2011 memorandum opinion, the trial court noted that it was "unaware of any authority to impose monetary sanctions that benefit the Office of the Attorney General." Trial Court Opinion, 10/6/11 at 8

n. 9. Based upon our determination that sanctions were not warranted in this case, we need not reach a decision on the merits of the trial court's underlying conclusion.